## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GARARD ACHELLES, 450380** | **CIVIL ACTION** |
| **VERSUS** | **NO.   20-715** |
| **WARDEN, DARRYL VANNOY** | **SECTION: "A"(5)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### *Procedural History*

Petitioner, Garard Achelles, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    On April 17, 2014, Achelles was charged by bill of indictment with two counts of second-degree murder of Tacara William-Moss and Demektric Anderson, one count of possession of a firearm by a convicted felon and one count of pandering by transporting two females for purposes of promoting the practice of prostitution in violation of La. Rev. Stat. §§ 14:30.1, 14:95.1, and 14:84.[1]    After the first trial

---

[1] State Rec., Vol. 1 of 16, Bill of Indictment, 4/17/14.    The indictment also charged co-defendant Jason L. Thomas with second degree murder and being a felon in possession of a firearm.

ended in a mistrial, the case against co-defendant Jason Thomas was severed for the second trial.[2]    After a four-day trial, on March 19, 2015, a jury found Achelles guilty as charged as to all counts.[3]    Achelles's motion for a new trial and judgment of acquittal was denied.[4] On April 6, 2015, Achelles was sentenced life imprisonment as to counts one and two, 20 year as to count three, and five years as to count four, all sentences to be served at hard labor, and the sentences as to counts one, two and three to be served without benefit of parole, probation, or suspension of sentence.[5]

On direct appeal, Achelles's appointed counsel asserted that the trial court erred by denying his *Batson* challenges because the State exercised its peremptory challenges in a discriminatory manner to exclude five prospective jurors.[6]    Achelles filed a pro se brief and a reply brief asserting the following claims: (1) the trial court abused its discretion in qualifying Lawrence Brookes as an expert in mechanical engineering and automotive design without conducting a *Daubert* hearing and (2) the trial court erred in denying his motion to sever offenses.[7]

---

[2]  State Rec., Vol. 1 of 16, Minute Entry, 1/22/15; Minute Entry, 3/11/15; State Rec., Vol. 10 of 16, Hearing Transcript, 1/22/15; Hearing Transcript, 3/11/15.    Thomas was convicted, and his conviction and sentence were affirmed.    *See State v. Thomas*, No. 15-KA-759 (La. App. 5 Cir. 5/12/16), 192 So. 3d 291, *writ denied*, No 2016-KO-1085 (La. 5/19/17), 219 So. 3d 335.

[3]  State Rec., Vol. 2 of 16, Minute Entry, 3/16/15; Minute Entry, 3/17/15; Minute Entry, 3/18/15; Minute Entry, 3/19/15; State Rec., Vol. 10 of 16, Trial Transcript, 3/16/15; Trial Transcript, 3/17/15; State Rec., Vol. 11 of 16, Trial Transcript (con't), 3/17/15; State Rec., Vol. 12 of 16, Trial Transcript State 3/18/15; ; State Rec., Vol. 13 of 16, Trial Transcript (con't), 3/18/15; Trial Transcript, 3/19/15; State Rec., Vol. 2 of 16, Verdicts, 3/19/15.

[4]  State Rec., Vol. 2 of 16, Motion for New Trial and for Post-Verdict Judgment of Acquittal, 3/26/15; Order, 3/27/15; State Rec., Vol. 13 of 16, Hearing Transcript, 3/26/15.

[5]  State Rec., Vol. 2 of 16, Minute Entry, 4/6/15; State Rec., Vol. 13 of 16, Sentencing Transcript, 4/6/15.

[6]  State Rec., Vol. 13 of 16, Appeal Brief, 16-KA-0170, 8/5/16.

[7]  State Rec., Vol. 13 of 16, Pro Se Appeal Brief, 16-KA-0170, 9/7/16 (signed 8/13/16); Pro Se

On December 21, 2016, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences on all four charges.[8]    The court informed Achelles of the two-year prescriptive period for filing an application for post-conviction relief as required by La. Code Crim. P. art. 930.8 and remanded the case to correct errors patent in the uniform commitment order to reflect the correct offense dates.[9]    On January 17, 2017, the trial court corrected petitioner's uniform commitment order as directed by the Louisiana Fifth Circuit.[10] On May 1, 2017, the Louisiana Supreme Court denied the related writ application without reasons.[11]

On July 27, 2017, Achelles filed an application for post-conviction relief with the trial court.[12]    In that application, he asserted (1) his appellate counsel was ineffective for failing to raise on appeal issues relating to the Confrontation Clause and sufficiency of the evidence; (2) his trial counsel was ineffective in failing to conduct pretrial investigation, interview eyewitnesses, summon critical defense witnesses, and prepare an adequate defense; (3) his trial counsel was ineffective in failing to retain an expert witness in the field of toxicology;

---

Reply Brief, 16-KA-0170, 12/14/16 (signed 12/6/16).

[8]  *State v. Achelles*, No. 16-KA-170 (La. App. 5 Cir. 12/21/16), 208 So. 3d 1068; State Rec., Vol. 13 of 16.

[9]  *Id.*, at p. 1080-81; State Rec., Vol. 13 of 16.

[10]  State Rec., Vol. 2 of 16, Minute Entry, 1/17/17; Uniform Commitment Order, 1/18/17.

[11]  *State v. Achelles*, 2017-KO-0227 (La. 5/1/17); State Rec., Vol. 16 of 16.

[12]  State Rec., Vol. 2 of 16, Uniform Application for Post-Conviction Relief; State Rec. Vol. 3 of 16, Memorandum in Support of Post-Conviction Relief Application.    Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).    The post-conviction application made a part of the state record is dated July 27, 2018.

and (4) his trial counsel was ineffective in failing to request a mistrial after a State witness made a prejudicial comment in the jury's presence.    Achelles also filed a request for an evidentiary hearing and a motion for leave to file supplemental post-conviction relief claims. [13]    The trial court denied Achelles's requests for an evidentiary hearing, appointment of counsel, and to supplement his application and ordered the State to respond to petitioner's application.[14]

Achelles filed a supplement asserting numerous additional ineffective assistance of counsel claims. [15]    On September 10, 2018, the trial court denied the supplemental application for post-conviction relief. [16]    On November 21, 2019, Achelles again filed supplemental claims, nearly identical to his first supplement.[17]    On December 3, 2018, the trial court denied the second supplemental application finding that post-conviction applications are not meant to be filed in a piecemeal fashion.[18]    On January 31, 2019, the Louisiana Fifth Circuit denied petitioner's writ application related to the trial court's August 13 and September 10, 2018 orders.[19]

On December 17, 2018, the trial court denied the claims in petitioner's first

---

[13]   State Rec., Vol. 3 of 16, Motion for Evidentiary Hearing and for the Appointment of Counsel, 7/27/18; Motion for Leave to File Supplemental Post-Conviction Relief Claims, 7/27/18.

[14]   State Rec., Vol. 3 of 16, Order, 8/13/18.

[15]   State Rec., Vol. 3 of 16, Supplemental Post-Conviction Relief Claims, 8/27/18.

[16]   State Rec., Vol. 3 of 16, Order, 9/10/18.

[17]   State Rec., Vol. 3 of 16, Supplemental Post-Conviction Relief Claims, 11/27/18 (signed 11/21/18).

[18]   State Rec., Vol. 4 of 16, Order, 12/3/18.

[19]   *State v. Achelles*, 18-KH-687 (La. App. 5 Cir. 1/31/19); State Rec., Vol. 14 of 16.

application finding that petitioner failed to prove his appellate and trial counsel were ineffective.[20]    On December 27, 2018, petitioner filed a rebuttal, which the trial court denied on January 7, 2019.[21]

On April 12, 2019, the Louisiana Fifth Circuit denied Achelles's writ application finding the trial court did not err by denying an evidentiary hearing and that petitioner failed to satisfy the requisite burden of proof to establish his claims regarding ineffective assistance of appellate and trial counsel.[22]

On May 16, 2019, Achelles filed a writ application with the Louisiana Supreme Court.[23] On February 18, 2020, the Louisiana Supreme Court denied Achelles's writ application finding he failed to show he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S Ct 2052, 80 L.Ed.2d. 674 (1984).[24]

In the interim, on May 16, 2019, Achelles filed a second application for post-conviction relief based on newly discovered evidence.[25]    He also filed a motion for new trial and a request for production of documents.[26]    For a third time he filed, his supplemental

---

[20]  State Rec., Vol. 4 of 16, State District Court Order denying post-conviction relief, 12/17/18.

[21]  State Rec., Vol. 4 of 16, Rebuttal to State's Response in Opposition to Petitioner's Application for Post-Conviction Relief, 12/27/18; Order, 1/7/19.

[22]  *Achelles v. Vannoy*, 19-KH-104 (La. App. 5 Cir. 4/12/19) (unpublished); State Rec., Vol. 14 of 16; 5th Cir. Writ Application, 19-KH-104, 3/7/19.

[23]  State Rec., Vol. 16 of 16, La. S. Ct. Writ Application, 19 KH 922, 5/21/19 (signed 5/16/19).

[24]  *State v. Achelles*, 2019–KH–00822 (La. 2/18/20) (per curiam), 289 So. 3d 1012; State Rec., Vol. 16 of 16.

[25]  State Rec., Vol. 4 of 16, Second of Subsequent Uniform Application for PostConviction Relief, 5/16/19.

[26]  State Rec., Vol. 4 of 16, Motion and Order or Production of Documents with Particularized Need, 5/21/19; Motion and Order for a New Trial Predicated Upon Newly Discovered Evidence and Facts, 5/21/19.

claims of ineffective assistance of counsel.[27]

On June 18, 2019, the trial court once again denied the supplemental claims.[28]    On that same date, the court denied petitioner's motion for new trial, finding that a statement from a convicted felon was not exculpatory, did not contradict the testimony at trial, and would not have changed the verdict.[29]    In denying the second application for post-conviction relief, the court found that an exhibit submitted by petitioner, a statement by Glenn Lemon, was procedurally flawed and did not meet the requirements of La. Rev. Stat. § 35:12.[30]    The court found relief on the merits unwarranted as the "new evidence" was not exculpatory and did not support relief.[31]    The court also denied petitioner's request for production of documents, finding that petitioner failed to provide a particularized need for the documents.[32]

On October 28, 2019, the Louisiana Fifth Circuit denied petitioner's writ application.[33] The Louisiana Supreme Court denied petitioner's related writ application as untimely, citing Louisiana Supreme Court Rule X, § 5(a).[34]

---

[27]  State Rec., Vol. 4 of 16, Supplemental Post-Conviction Relief Claims, 5/2/19.

[28]  State Rec., Vol. 4 of 16, Order, 6/18/19.

[29]  State Rec., Vol. 4 of 16, Order, 6/18/19.

[30]  State Rec. Vol. 4 of 16, State District Court order denying second application for post-conviction relief, 6/18/19.

[31]  *Id.*

[32]  State Rec., Vol. 4 of 16, Order, 6/18/19.

[33]  *State ex rel. Achelles v. State*, 19-KH-428 (La. App. 5 Cir. 10/28/19); State Rec., Vol. 14 of 16.

[34]  *State ex rel. Achelles v. State*, 2020-KH-0005 (La. 2/26/20); State Rec., Vol. 16 of 16.

On February 24, 2020, Achelles filed the instant application for habeas corpus relief.[35] In that application, Achelles claims: (1) ineffective assistance of appellate counsel based on the failure to raise on appeal violation of the Confrontation Clause and sufficiency of the evidence; (2) ineffective assistance of counsel as a result of failure to investigate, interview and subpoena witnesses for trial, secure an expert witness in drug side effects, request a mistrial, and prepare an adequate defense; (3) the trial court erred in denying his *Batson* challenge to the use of the State's peremptory challenges, it abused its discretion in failing to ensure that *Daubert*'s "gatekeeping obligation" was properly applied, and it abused its discretion in denying the defense motion to sever offenses; and (4) ineffective assistance of counsel for failing to call a favorable defense witness.    Achelles only briefed his first two claims and asked to brief his remaining claims at a later date due to lockdowns in the prison and the lack of access to legally trained inmate counsel.[36]

The State appears to concede that Achelles has exhausted his state-court remedies with respect to the claims he briefed, and that his petition is timely.[37]    The State claims that petitioner's first two claims, the only claims the State addresses, are procedurally barred pursuant to La. Code Crim. P. art. 926(B)(3) and Rule 2(C) of the Rules Governing Section 2254 Cases in the United States District Court because they lack specificity and fail to state the facts supporting each ground for relief.    The State alternatively claims that the claims

---

[35]  Rec. Doc. 5, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.

[36]  *Id.*, at pp. 16-17.

[37]  Rec. Doc. 23.

are meritless.    Achelles filed a traverse objecting to the State's response as untimely.[38]
On June 17, 2021, he filed a second traverse addressing the State's response, although he still
did not brief claims three and four.[39]     For the following reasons, the Court rejects the State's
argument that the claims are procedurally barred and will therefore review the merits of the
claims.

*Preliminary Review*

As a preliminary matter, the Court considers the State's assertion that Achelles's first
two claims of ineffective assistance of counsel were procedurally barred under state law by
the state courts, and thus procedurally defaulted on federal review.    Here, as the State
asserts, the trial court agreed that the claims lacked the required specificity under Louisiana
Code of Criminal Procedure article 926(B)(3).[40]    However, the trial court also addressed
the merits of the claims and found Achelles had not met his burden under *Strickland*.[41]
More significantly, the Louisiana Supreme Court then denied relief, stating that "[a]pplicant
fails to show that he received ineffective assistance of counsel under the standard of
*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[42]    The ruling
by the Louisiana Supreme Court was not a silent or unexplained order rejecting the claims
as contemplated by the United States Supreme Court in *Ylst v. Nunnemaker*, 501 U.S. 797,

---

[38]  Rec. Doc. 24.

[39]  Rec. Doc. 26.

[40]  State Rec., Vol. 4 of 16, State District Court Order denying post-conviction relief, pp. 1-2, 12/17/18.

[41]  *Id.*

[42]  *State v. Achelles*, 2019–KH–00822 (La. 2/18/20) (per curiam), 289 So. 3d 1012; State Rec., Vol. 16 of 16.

801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991), in which the Court fashioned the presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."    *Id.* at 803, 111 S.Ct. at 2594.    Rather, the stated reasons for the denial plainly reference federal law, namely *Strickland*, which applies to all of Achelles's ineffective assistance of counsel claims.    Considering the final reasoned disposition, it does not appear that the Louisiana Supreme Court relied on a state-law procedural bar in rejecting claim one or two.    If the last state court to reach the issue looks to its merits, then the federal courts are also free to review the issue on its merits.    *Id.* at 801.    For this reason, the Court rejects the State's assertion that Achelles's first two claims are procedurally defaulted.

The State also argues that Achelles's failed to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.    Under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, a habeas petitioner must state the facts supporting each ground for relief.    *See Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005).    While the State asserts that Achelle's first two grounds for relief are insufficient and therefore violative of Rule 2(c), the Court finds otherwise.    Further, while Achelles did not brief claims three and four, he did request in his brief additional time to do so.    Given, that Achelles previously briefed these claims in his pleadings before the state courts, and in the interest of justice, the Court will address all the claims on the merits.[43]

---

[43] The Court notes that because the State did not address Achelles's fourth claim, it did not address whether the claim was technically procedurally barred for failure to exhaust in a procedurally proper manner given that the Louisiana Supreme Court found his related writ application untimely pursuant to La. S. Ct. R. X § 5(a).    Nonetheless, a federal court has the authority to deny habeas claims on the merits, regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state.    28 U.S.C. § 2254(b)(2); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir.

*Facts*

Here are the record facts as succinctly summarized by the Louisiana Fifth Circuit on

direct appeal established the following:

> This case stems from the killings of Demektric Anderson and
> Tacara Williams–Moss that occurred in Jefferson Parish in the early
> morning hours of December 30, 2013.
>
> Ramonica Gainey, a friend of both victims, testified at trial
> regarding the events surrounding and leading up to the murders.
> According to Ms. Gainey, she traveled with Mr. Anderson and Ms.
> Williams–Moss from Memphis to New Orleans in December of 2013 in
> a black Dodge Charger belonging to Ms. Williams–Moss.    The group
> checked into a Super 8 Hotel in Metairie, and while in town, Ms. Gainey
> planned to make money by "entertaining."    To accomplish that
> purpose, Ms. Gainey explained that she made postings to a website,
> Backpage.com, listing her picture and a contact phone number. Shortly
> after her post on December 30, 2013, at 4:21 a.m., Mr. Anderson
> received a phone call and then relayed to Ms. Gainey and Ms. Williams–
> Moss that he had to go deliver some Xanax pills.
>
> Eventually, all three of them left the hotel in the black Dodge
> Charger to meet the potential buyer for the pills.    Mr. Anderson drove,
> Ms. Williams–Moss was in the front passenger seat, and Ms. Gainey was
> in the rear passenger seat.    They drove a short distance and arrived
> at an apartment complex.    As they pulled into the apartment complex,
> Ms. Gainey saw a black man standing on the driver's side.    Mr.
> Anderson spoke with the man through the rolled-down driver's side
> window about the price of the pills.    Ms. Gainey then noticed another
> black man at the rear of the car and heard him say, "Is this the guy?"
> As Mr. Anderson was reaching to put the car in reverse, the two men
> "opened fire on the car."    Ms. Gainey related that after Mr. Anderson
> collapsed and the car crashed off the service road, she called 9–1–1. As
> a result of this gunfire, Mr. Anderson and Ms. Williams–Moss were
> fatally wounded.[3]
>
> Sergeant Eddie Klein, Detective Thomas Gai, and other members

---

1998); *Woods v. Cain*, Civ. Action No. 06–2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008).
Moreover, a federal habeas court need not determine whether a claim is procedurally barred when the
claim clearly fails on the merits.    *See Glover v. Hargett*, 56 F.3d 682, 684 (5th Cir.1995); *Wiley v.
Puckett*, 969 F.2d 86, 104 (5th Cir.1992); *Williams v. Cain*, Civ. Action No. 11–1777, 2012 WL 253109,
at *2 (E.D.La. Jan. 3, 2012), *adopted*, 2012 WL 253063 (E.D. La. Jan. 26, 2012); *Corzo v. Murphy*, Civ.
Action No. 07–7409, 2008 WL 3347394, at * 1 n. 5 (E.D. La. July 30, 2008).

of the Jefferson Parish Sheriff's Office arrived and began their investigation at both the primary scene where the shooting occurred at 2508 Pasadena Avenue and the secondary scene where the incident ended by the entrance ramp near Clearview by the south service road. At trial, Sergeant Eddie Klein testified about the collection of evidence at these two scenes.    At the primary scene, the officers recovered a total of sixteen casings from both .45 and 9 mm caliber guns.    At the secondary scene, they recovered projectiles from inside of the vehicle, four cell phones, including the one belonging to and surrendered by Ms. Gainey, and two clear bags containing marijuana and pills, later determined to be Xanax.

In addition to collecting evidence, the officers obtained surveillance videos from cameras located in the area surrounding both crime scenes.    The videos showed a blue vehicle parking on the corner of Guiffrias and L Streets and two individuals exiting the vehicle and walking in the direction of the location on Pasadena Avenue where the shootings occurred. Subsequent video shows one suspect running in the direction of the parked vehicle and a second suspect trailing behind.    At trial, Lawrence Brookes, an expert in mechanical engineering and automotive design, testified that the blue car depicted in the video surveillance was a Dodge Avenger.

In addition to collecting evidence and obtaining surveillance videos, Detective Gai spoke with Ms. Gainey, the surviving witness, during the initial investigation.    As a result, Detective Gai learned about the drug transaction between the victims and suspects and further discovered that arrangements for the purchase were made via Mr. Anderson's cell phone.

Detective Gai thereafter obtained search warrants for the cell phones recovered and turned them over to the digital forensic unit for analysis.    Of the three phones analyzed, Detective Solomon Burke with the Jefferson Parish Sheriff's Office Digital Forensics Unit was only able to extract data from Mr. Anderson's phone.    His analysis revealed that during the time frame leading up to the shootings, Mr. Anderson's phone had five interactions with the suspect phone number 504–214–9686—two incoming calls and three outgoing calls.    In particular, Mr. Anderson received two calls from the 214 number on December 30, 2013, the day of the murders—one at 3:01 a.m. and one at 4:58 a.m. The three outgoing calls were also on December 30, 2013—at 5:02 a.m., 5:10 a.m., and 5:13 a.m. After the 5:13 a.m. call, there was no more outgoing activity on Mr. Anderson's phone.

Given that these calls occurred in close proximity to the shootings, Detective Gai attempted to track this suspect phone, which

was determined to be associated with a prepaid customer.    When the cell phone provider was unable to provide a location for this phone, Detective Klein did a Google search of the number that revealed the number was listed on several ads on Backpage.com, a website that facilitates prostitution.    Based on the names in these ads, "Magic" and "Honey," the officers searched and discovered other phone numbers connected to these two women.

Detective Gai then contacted Sergeant Locascio of the vice squad, and he arranged a meeting with these two females at the La Quinta Hotel on Veterans Boulevard.    The two women, who arrived in a blue Dodge Avenger driven by defendant, proceeded to the hotel room that had been rented out by Sergeant Locascio.    After a transaction was made between him and the women, Detective Gai proceeded to the room, and the two individuals, identified as Abby Stallworth and Calvenia Dott, were arrested.

Both Ms. Stallworth and Ms. Dott testified at trial regarding their association with defendant and the circumstances surrounding their stay in the New Orleans area.    Their testimony indicated that they came to New Orleans twice in December of 2013 to try to make money through prostitution and that they used the website Backpage.com to facilitate their work.    On their first trip, they met defendant, who introduced himself as "Hurk," and Jason Thomas, referred to as "Jay," at the Super 8 Hotel in Metairie.    The parties exchanged phone numbers during this first encounter, and at some point, both Ms. Stallworth and Ms. Dott returned to Mississippi.    However, after Christmas, they called Mr. Thomas expressing their desire to return, and defendant, Mr. Thomas, and Glenn Lemmon[4] came to Mississippi in a blue Dodge and brought them back to New Orleans.    On this second trip, they stayed at the same Super 8 Hotel in Metairie and again posted on Backpage.com, using a phone that was not their own; it was a flip phone that they had gotten from Mr. Thomas with the phone number 504–214–9686.

[4] Glenn Lemmon is referred to as "Ace" throughout the transcript.

While they were staying at the Super 8, defendant and Mr. Thomas "met a guy at the store in a black Charger," who was selling pills, in particular, Xanax. When the two women expressed an interest in getting some pills, a phone call was made to the seller with the flip phone used in the Backpage.com ad.    The two men left and came back with the pills.    After their return, Mr. Thomas commented that he wanted to rob the person in the black Charger because he saw some pills and money in the car.    The two men left again, and on this occasion, defendant and Mr. Thomas each took a gun with them, as well as the flip phone used to post on the Backpage.com ad.

Defendant and Mr. Thomas did not return to the Super 8 Hotel, and pursuant to instructions by Mr. Lemmon, Ms. Stallworth and Ms. Dott relocated to another hotel, the London Lounge.    While in the hotel room with defendant, Mr. Thomas, and Mr. Lemmon, news came on the television about the murders of individuals in a black Charger. Ms. Dott described that "they weren't acting the same" because they were "just all quiet and stuff."    Then the women overheard Mr. Thomas comment that he "got that boy."    Ms. Stallworth also heard defendant say that he shot too.    In addition, Mr. Thomas complained about injuring his foot and defendant told him to "get rid of them shoes."    There was further conversation that the flip phone had been thrown in the river.[5]    Since this phone that they were using for their Backpage.com ad was no longer available, Ms. Stallworth and Ms. Dott had to use their own phones for business.

[5] At trial, testimony indicated that the last two calls made by the suspect phone utilized towers near the Mississippi River.    In addition, the Automatic License Plate Recognition System placed the Dodge Avenger near the Mississippi River at the time of the last call.

Subsequently, they received a call from a client, asking them to meet at the LaQuinta Inn. After Ms. Dott informed defendant of the call, defendant drove them to the hotel to engage in prostitution.    Once in the hotel room, Ms. Stallworth and Ms. Dott were arrested pursuant to the sting operation and brought to the criminal investigations bureau for questioning.    As a result of the interviews, the officers were lead to suspects in the shootings—Garard Achelles a/k/a "Hurk," Jason Thomas a/k/a "Jay," and Glenn Lemmon a/k/a "Ace."

In addition, Sergeant Klein stopped defendant on the scene of the sting operation in a blue Dodge Avenger.    After defendant was arrested, he gave a statement, in which he claimed to be at McDonald's with Mr. Lemmon and Mr. Lemmon's girlfriend, Daintia Brock, during the time surrounding the shootings.    However, through the course of the investigation, it was proven that defendant was not at the McDonald's.[6] In his statement, defendant also admitted being in possession of a firearm.[44]

[6] At trial, Daintia Brock testified that on December 30, 2013, she spent time with defendant, Jason Thomas, and Glenn Lemmon at the Super 8 Hotel.    At some point, she, Mr. Lemmon, and defendant's girlfriend, Sheranda, went to the McDonald's at 2916 Jefferson Highway.    However, she testified that neither Mr. Thomas nor defendant went to McDonald's with them.    The State introduced the receipts from McDonald's dated December 30, 2013, which indicated times at 5:27 and 5:31 a.m. The State also introduced a still photograph taken from the surveillance at McDonald's that morning. Ms. Brock identified herself, Mr. Lemmon, and Sheranda in

[44]  *State v. Achelles*, 16-KA-170 (La. App. 5 Cir. 12/21/16), 208 So. 3d 1068, 1071-1074; State Rec., Vol. 13 of 16.

the photograph.

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States

Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405B06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one."    *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts— from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts.    28 U.S.C. § 2254(d).    With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.    *Cullen v. Pinholster*, 563 U.S. 170,

185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    Instead, the federal courts review those claims under pre-AEDPA *de novo* standards of review.    *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

*Analysis*

## A.    Ineffective Assistance of Counsel (Claims One, Two, and Four)

In claim one, Achelles asserts that he was denied effective assistance of appellate counsel when his counsel failed to raise on appeal issues related to violation of the Confrontation Clause and sufficiency of the evidence.    In claim two, he contends he was denied effective assistance of trial counsel as a result of counsel's failure to investigate the case, interview and subpoena witnesses, secure an expert, request a mistrial, and prepare an adequate defense.    In claim four, Achelles claims his counsel was ineffective in failing to call Glenn Lemon to testify at trial.

The trial court rejected Achelles's claims that his trial and appellate counsel rendered ineffective assistance raised in his application for post-conviction relief.[45]    The trial court found that Achelles failed to meet his burden of proof with regard to his claim that his counsel failed to conduct an adequate pretrial investigation.[46]    It found that he failed to provide any accounts of affidavits from potential witnesses to bolster his claims, but that defense counsel in fact elicited testimony from some of the witnesses who testified at trial

---

[45]    State Rec., Vol. 4 of 16, State District Court Order denying post-conviction relief, 12/17/18.

[46]    *Id.*, at p. 2.

that they could not identify the perpetrators and pointed out the discrepancies in their testimony.[47]    With regard to the claim regarding counsel's failing to call an expert witness, the trial court found that the jury was aware that some of the witnesses were under the influence of drugs at the time of the murders because defense counsel elicited testimony that they were under the influence of Xanax and marijuana, as well as their inconsistencies in their testimony.[48]    The trial court found that a mistrial was not warranted as a result of a non-responsive answer by Calvenia Dott.[49]    The Louisiana Fifth Circuit Court of Appeal denied Achelles's related writ application.[50]    In the last reasoned opinion, the Louisiana Supreme Court denied writs, finding "Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)."[51]

With regard to claim number four, wherein Achelles alleges his counsel was ineffective for failing to present the testimony of Lemon, the trial court found that Lemon's statement was procedurally defective and, further, that the evidence would not be exculpatory.[52]    The Louisiana Fifth Circuit denied petitioner's related writ application.[53]

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *State ex rel. Achelles v. State*, 19-KH-428 (La. App. 5 Cir. 10/28/19); State Rec., Vol. 14 of 16.

[51] *Achelles v. Vannoy*, 2019-KH-00822 (La. 2/18/20) (per curiam), 289 So. 3d 1012; State Rec, Vol. 16 of 16.

[52] State Rec. Vol. 4 of 16, State District Court order denying second application for post-conviction relief, 6/18/19.

[53] *State ex rel. Achelles v. State*, 19-KH-428 (La. App. 5 Cir. 10/28/19); State Rec., Vol. 14 of 16.

The Louisiana Supreme Court denied petitioner's related writ application as untimely, citing Louisiana Supreme Court Rule X, § 5(a).[54]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both deficient performance by counsel and that the deficient performance prejudiced his defense.    *Strickland*, 466 U.S. at 697.    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009)..    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' "    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993)

---

[54] *State ex rel. Achelles v. State*, 2020-KH-0005 (La. 2/26/20): State Rec., Vol. 16 of 16.

(quoting *Strickland*, 466 U.S. at 690).     A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.     *See Harrington*, 562 U.S. at 104 (*citing Strickland*, 466 U.S. at 689).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."     *Strickland*, 466 U.S. at 694; *see also Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).     Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."     *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).     In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."     *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at. 694).

The Supreme Court has held that the two-prong test articulated in *Strickland* applies to ineffective assistance claims in the guilty plea context.     *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).     To establish deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness."     *Id*. at 57.     "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and might be considered sound trial strategy.     *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted).     To satisfy the prejudice prong in the guilty plea context, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."     *Hill*, 474 U.S. at 59.

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations and quotation marks omitted).

Accordingly, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 563 U.S. 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009) ). The federal courts must look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S.Ct. at 1419 n. 2). Furthermore, the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689–90); *see also Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Because the state courts rejected Achelles's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court

must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

1.    *Effective Assistance of Trial Counsel: Claims Two and Four*

Achelles claims his counsel failed to conduct a pretrial investigation of the case.    He also claims that his counsel failed to interview key prosecution witnesses, including Calvenia Dott, Abby Stallworth, Ramonica Gainey, Chad Grunbery[55], as well as potential defense witnesses, including Daintia Brock, Penny Smith, Johnny Smithey, Glenn Lemon, and co-defendant Jason Thomas, and call them to testify at trial.    He additionally claims his counsel failed to secure an expert witness to testify regarding the effects of drug Xanax.    He also claims his counsel was ineffective in failing to move for a mistrial.    Finally, he claims his counsel was ineffective in failing to present a proper defense.

Achelles claims had defense counsel interviewed the State's witnesses and potential defense witnesses, they would have obtained the necessary information to assist in an appropriate defense and preparation of the case.[56]    With respect to an attorney's duty to

---

[55]    On April 14, 2014, Chad Grunbery gave a statement to police that someone shot into his residence and that, while he saw two males shoot into a vehicle and then flee from the scene, he could not identify them.    State Rec., Vol. 3 of 15, Memorandum in Support of Post-Conviction Relief Application, Exh. B, 8/7/18.

[56]    Rec. Doc. 5-1, p. 24.

investigate, the controlling law provides:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.    In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. at 690-91).    A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.    *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).

Achelles merely speculates that counsel did not adequately investigate the case and prepare for trial.    He presents no objective evidence at all to establish either that his counsel in fact failed to conduct a proper investigation.    He is required to present more than conclusory assertions to establish ineffective assistance of counsel.    *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").    Here, the record shows that counsel actively engaged in discovery and that open-file discovery was provided to defense.[57]    Defense counsel filed numerous motions related to the discovery.[58]

---

[57]  State Rec., Vol. 1 of 16, State's Response to Defendant's Motion to Inspect, Examine, Test and Photograph Physical Evidence, for Disclosure of Impeaching Evidence, and Motion for a Bill of Particulars, 6/3/14; State's Supplemental Discovery Inventory, 7/25/14.

[58]  State Rec., Vol. 1 of 16, Motion in Limine to Exclude Irrelevant and Prejudicial Evidence Specifically Jailhouse Phone Calls Allegedly Made by Defendant, 12/1/14; Motion in Limine to Exclude all Surveillance Footage of Blue Nissan Seen on or Around Giuffrias Street, 12/1/14; Defense Motion

Counsel's questioning of the witnesses at trial shows that they were prepared and informed.

With regard to interviewing witnesses, Achelles has presented nothing but his self-serving argument to establish that counsel did not contact the prospective witnesses. A petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail on such a claim. See *Thomas v. Cain*, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

In any event, the record reflects that, at a hearing on December 15, 2014, counsel for Achelles asked the trial court if Abby Stallworth, who was present at the hearing, was willing to speak with the defense.[59] The trial court replied that it was up to Stallworth whether she wanted to speak with defense and that the court was simply explaining why she was being held under a material witness warrant.[60] At trial, Stallworth confirmed she had met defense counsel before and that they had had a conversation about the night of the murder.[61]

Glenn Lemon specifically stated in his written statement that he was interviewed by the defense attorneys.[62] The record reflects that "Grundon," presumably Grunbery, was interviewed by defense counsel.[63] Defense counsel was aware of Smithey's statement

---

Requesting Subpoena Duces Tecum, 12/1/14;State Rec., Vol. 2 of 16, Defense's Objection to State's LA. C.E. Article 404(B) Evidence; Memorandum of Law in Support of Defendant's Motion in Limine to Preclude Admission of Cellular Telephone Tower "ping" Evidence, 3/9/15; Defendant's Objection to State's Notice of Expert Witness and Motion in Limine, or, in the Alternative, the Expert Testimony and Request for *Daubert* Hearing, 3/9/15.

[59] State Rec., Vol. 10 of 16, Hearing Transcript, p. 9, 12/15/14.

[60] *Id.*

[61] State Rec., Vol. 12 of 16, Trial Transcript, pp. 222-24, 3/18/15.

[62] State Rec., Vol. 4 of 16, Second or Subsequent Uniform Application for Postconviction Relief, Exh. A, 5/16/19.

[63] State Rec., Vol. 10 of 16, Hearing Transcript, p. 11, 1/20/15, p. 11.

given to law enforcement that he saw a blue Nissan the night of the murder, and counsel attached the statement to a motion in an unsuccessful attempt to prevent surveillance video from being admitted at trial.[64]    As for the other witnesses, Achelles has not presented any evidence that his counsel failed to interview them or any resulting prejudice therefrom.

Next, Achelles asserts that defense counsel was ineffective in failing to subpoena co-defendant Jason Thomas, Glenn Lemon, and Dainita Brock to testify at trial.    He also claims that his counsel should have hired an expert to testify regarding the side effects of drugs.

As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.    For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.    This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *accord Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").    The Fifth Circuit has "clarified that

---

[64]  State Rec., Vol. 10 of 16, Hearing Transcript, at pp. 7, 11, 3/11/15; State Rec., Vol. 2 of 16, Motion in Limine to Exclude All Surveillance Footage of Blue Nissan Seen On or Around Giuffrias Street, Exh. A, 3/9/15.

the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.' "    *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).    For the following reasons, Achelles has failed to establish ineffective assistance for failing to call these witnesses to testify under *Strickland.*

Initially, Achelles claims his counsel was ineffective in failing to secure an expert witness in toxicology to testify regarding the effects of the drug Xanax, which Stallworth and Dott had ingested at the time they heard Achelles and Thomas and Lemon discussing incriminating details of the murders.    He contends an expert could have assisted the jury in understanding the consequences and effect of a combination of the narcotic Xanax and THC when ingested in excessive quantity.

Achelles has presented no evidence, however, demonstrating that an expert was available and would have testified regarding the effects of Xanax, THC, or a combination thereof.    Achelles has not identified any expert witness who was available and willing to testify.    Nor has he set forth the content or substance of the expert witness' proposed testimony.    As a result, he cannot establish that his counsel was ineffective for failing to present the testimony of a purely theoretical expert.    *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue").    For this reason, his claim regarding his counsel's failure to retain an expert fails.

As for his claim that his trial counsel failed to subpoena Jason Thomas, Glenn Lemon

and Dainita Brock, subpoenas were issued for all three.[65]    Notably, both Dainita Brock and Glenn Lemon were on the *State's* witness list.[66]    Brock in fact testified in the State's case-in-chief and did not provide any exculpatory testimony.    Rather, Brock testified that she Sheranda and Glenn Lemon drove to McDonald's in Sheranda's Lexus around 5:15 a.m. on the morning of the murders.[67]    She specifically testified that Achelles was not with them.[68] She identified two McDonald's receipts from 5:27 a.m. and 5:31 a.m.[69]    She further identified surveillance depicting herself, Sheranda, and Lemon at the McDonald's restaurant.[70]    Notably, the surveillance did not show Achelles, and Brock testified that she did not see him until they went to a different hotel.[71]    Defense counsel vigorously cross-examined Brock regarding her memory, who paid for the food, and why she retained the receipts.[72]

       While it is true that neither Thomas nor Lemon were called to testify on behalf of the

---

[65]    Daintia Brock was subpoenaed by the State.    State Rec., Vol. 6 of 16, Subpoena, 2/23/15; *See* State Rec., Vol. 10 of 16, Trial Transcript, p. 3, 3/16/15 (the trial court ordered Brock, who was present, to return the following morning at 9:00 a.m.).    Glenn Lemon was present during trial and was under subpoena as a State witness although he was not ultimately called by the State to testify. *See* State Rec., Vol. 12 of 16, Trial Transcript, pp. 123, 242, 3/18/15.    Defense counsel requested an instanter subpoena for Thomas.    *See id.*, at p. 162-64.

[66]    State Rec., Vol. 1 of 16, State Witness List, 8/25/14; Amended State Witness List, 9/23/14; Amended State Witness List, 11/18/14; Amended State Witness List, 12/3/14; Amended State Witness List, 3/9/15.

[67]    State Rec. Vol. 12 of 16, Trial Transcript, p. 82, 3/18/15.

[68]    *Id.*

[69]    *Id.*, at p. 83.

[70]    *Id.*, at pp. 84-85.

[71]    *Id.*, at pp. 85-86.

[72]    *Id.*, at pp. 86-102.

defense, Achelles's admits that his counsel in closing argument shifted the blame of the murders to Thomas and Lemon.[73]    Moreover, Achelles submitted a statement from Lemon who states that the reason he did not testify is because "both of their lawyers specifically Jermone Matthews and Dante Butler was [sic] acting very hostile towards [him]" and were trying to get him to place the blame on Achelles and/or Thomas and Lemon.[74]    Lemon claimed that he told the defense attorneys that he knew nothing about a murder and that on the morning of December 30, 2013, Achelles dropped Thomas off at his home in a two-door silver car.[75]    He claimed Stallworth called him looking for Thomas and Achelles while he was at McDonald's restaurant.[76]    He claimed Stallworth asked him for Thomas's password to his phone because she had a date and did not feel safe driving because she had been taking pills.[77]    According to Lemon, he told her he would pick her up about 8:30 or 9:00 a.m. and then had to take Thomas to court.[78]    He claimed he checked into the London Lodge because he was tired and did not want to fall asleep driving.[79]

    None of the information in Lemon's statement, which was witnessed by an unidentified witness and not properly notarized (as no printed name or notary identification

---

[73]  Rec. Doc. 5-7, p. 21 (claiming defense counsel "said that Petitioner's (2) friends were responsible for the crime instead referring to Glenn Lemon and co-defendant Jason Thomas."). Closing arguments were not transcribed and are not a part of the State Court Record.

[74]  State Rec., Vol. State Rec., Vol. 4 of 16, Second or Subsequent Uniform Application for Postconviction Relief, 5/16/19, Exh. A, 1/4/19.

[75]  *Id.*

[76]  *Id.*

[77]  *Id.*

[78]  *Id.*

[79]  *Id.*

appear and the signature cannot be read) explains the whereabouts of Achelles at the time of the murders.    Rather, Lemon confirms that neither Achelles nor Thomas were with him at McDonald's restaurant around the time the murders occurred.

Further, had Lemon testified, the State would likely have been permitted to admit a jail telephone call between Lemon and Achelles, which the defense had successfully argued was hearsay.[80]    During that call, Achelles said, "[w]e're going to talk to the people in Mississippi, and then when you get out, you are Sheranda need to take a trip to Tennessee."[81] The State asserted that Stallworth and Dott were from Mississippi and the surviving victim was from Tennessee.[82]    Lemon further stated, "[t]he police are questioning you because you're a pimp, and a pimp just got smashed."[83]    The trial court denied admission of the phone call finding the statements to be hearsay, and stated it would reconsider if Lemon testified.[84]

As for counsel's failure to call Thomas to testify, there was a discussion, in the presence of Thomas's counsel, regarding the possibility that Thomas would assert his Fifth Amendment privilege against self-incrimination if subpoenaed.    It is unlikely that Thomas, who was awaiting trial, would have willingly placed himself in jeopardy in order to serve as an alibi witness for petitioner.    Nevertheless, such suspicions aside, Achelles bears the burden in this proceeding of demonstrating that Thomas would have testified in a way that

---

[80]    State Rec., Vol. 12 of 16, Trial Transcript, pp. 240-43, 3/18/15.

[81]    *Id.*, at p. 240.

[82]    *Id.*, at p. 241.

[83]    *Id.*

[84]    *Id.*, at p. 243.

would have bolstered the defense.    In an attempt to meet this burden, Achelles submitted

an unnotarized statement of Jason Thomas dated July 25, 2018, in which Thomas states that

Achelles drove him home in a two-door silver coupe about 11:00 or 11:30 p.m. on December

29, 2013.[85]    Thomas states that he saw Achelles, Lemon and Brock the following morning

around 8:00 a.m.[86]    Thomas's statement simply does not bolster the defense as, even if

believed, Thomas could not account for Achelles's whereabouts at the time of the murders.

As for Penny Smith, Achelles presented no evidence to either the state courts or to

this court, such an as affidavit from Smith, showing that the witness was available and would

have testified in a manner beneficial to the defense.    He, in fact, provides no information

what the witness would have said if he had testified.    Therefore, petitioner has failed to

meet his burden of proof with respect to this claim.    *See, e.g.*, *United States v. Cockrell*, 720

F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective

assistance of counsel when the only evidence of a missing witness's testimony is from the

defendant"); *Buniff v. Cain*, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7,

2011); *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29,

2009) ("This Court may not speculate as to how such witnesses would have testified; rather,

a petitioner must come forward with evidence, such as affidavits from the uncalled

witnesses, on that issue."); *Combs v. United States*, Nos. 3:08-CV-0032 and 3:03-CR-0188,

2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court

with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they

---

[85] State Rec., Vol. 3 of 16, Memorandum in Support of Post-Conviction Relief Application, Exh.
C, 8/7/18.

[86] *Id.*

would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice.");

*Harris v. Director, TDCJ-CID*, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009)

("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness

is fatal to the claim of ineffective assistance.").

Next, Achelles claims his trial counsel was ineffective in failing to move for a mistrial

pursuant to La. Code Crim. P. art. 771(2) after Calvenia Dott made a prejudicial comment.

The following exchange occurred between the prosecutor and Dott:

> Q.    Ma'am, in the news story that talks about the murder, are there
> details that are provided about the murder that caused you to become
> concerned?
>
> A. Yes, sir.
>
> Q. Could you tell us what those are?
>
> A. And I'm going to get straight to the point to go ahead and get this
> over with.    They did it.[87]

Defense counsel immediately objected and a bench conference was held.[88]    Defense

counsel requested that the court instruct the witness not to draw conclusions.[89]    After the

conference, the trial court, again instructed Dott to simply answer the questions and not

jump to conclusions, but rather explain what she saw and knew.[90]    Dott responded, "I

wasn't saying my – I wasn't saying no opinion.    I was saying the truth."    The court replied

that it could not have a conversation with her and again asked her to just answer the

---

[87]    State Rec., Vol. 12 of 16, Trial Transcript, at pp. 136-37, 3/18/15.

[88]    *Id.*, at pp. 137-38.

[89]    *Id.*, at p. 138.

[90]    *Id.*, at pp. 138-39.

questions.[91]

The trial court, in rejecting the claim Achelles raised in a post-conviction application, found that:

> [t]he portions of the transcript cited in petitioner's brief reveal that there was lengthy sidebar discussions about the questioning and answers of the witness in question.    There was spirited advocacy and careful judicial control over this portion of the proceedings.    Defense counsel took action believed to be appropriate.    Under the facts of the testimony, a drastic remedy of a mistrial, as set forth in LSA-C.Cr.P. art. 771, was not warranted.[92]

To the extent that Achelles is arguing that counsel was ineffective for failing to move for a mistrial based on Dott's statement, that claim has no merit.    A decision as to whether to move for a mistrial is one of trial strategy.    *See Hatch v. Lambert*, 215 F. App'x 614, 615 (9th Cir. 2006); *Brooks v. Cain*, Civ. Action No. 06–1869, 2009 WL 3088323, at * 17 (E.D. La. Sept. 21, 2009); *Franklin v. Thompson*, Civ. Action No. 07–543, 2007 WL 3046642, at * 12 (E.D. La. Oct. 17, 2007).    "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."    *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

This did not involve a matter for which a mistrial is mandatory.    *See* La. Code Crim. P. art. 770.[93]    Further,

---

[91]  *Id.*, at p. 139.

[92]  State Rec., Vol. 4 of 16, State District Court Order denying post-conviction relief., at p. 3, 12/17/18.

[93]  La. Code Crim. P. art. 770 provides:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in

> Under La.C.Cr.P. art. 771, a mistrial is discretionary when a witness makes an irrelevant remark that might prejudice the defendant. Article 771 gives the trial court the option to either admonish the jury, upon motion of the defendant, or, if an admonition does not appear sufficient, to declare a mistrial.
>
> A mistrial should be granted under Article 771 only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial.
>
> A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to a defendant that deprives him of a reasonable expectation of a fair trial.

*State v. Wall*, No. 14–KA–539. (La. App. 5 Cir. 12/23/14), 209 So. 3d 962, 971 (citations omitted).

Those circumstances simply are not present here. Counsel's choice to proceed with the trial, rather to seek a mistrial based on a singular statement from one witness during a three-day trial where the State presented nine witnesses, and in which a vast amount of evidence was adduced, did not result in substantial prejudice to Achelles such that it deprived him of a reasonable expectation of a fair trial. Moreover, there is no reason to believe that a mistrial would have been granted even if one had been requested. The testimony was not grounds for a mandatory mistrial under state law, and Achelles has not

---

argument, refers directly or indirectly to:

> (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> (3) The failure of the defendant to testify in his own defense; or
>
> (4) The refusal of the judge to direct a verdict.
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

demonstrated a reasonable probability that the trial court would have resorted to such a drastic option as a matter of discretion.    *See* La. Code Crim. P. art. 771.    A motion for a mistrial would have had no merit and counsel is not ineffective for failing to make a meritless motion for a mistrial.    *McKee v. Cain*, Civ. Action No. 10-344, 2010 WL 4366041, at *9 (E.D. La. Sept. 30, 2010), *adopted*, 2010 WL 4362769 (E.D. La. Oct. 25, 2010); *Fields v. Cain*, Civ. Action No. 05-0074, 2007 WL 458208, at *4 and 17 (E.D. La. Feb. 8, 2007)    Therefore, Achelles has not shown either that counsel performed deficiently in this regard or that prejudice resulted.

As to counsel's failure to request an admonishment, a decision on such matter is one of trial strategy and, as such, is subject to "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."    *Strickland*, 466 U.S. at 689. Achelles has not overcome that presumption in the instant case.    On cross-examination, defense counsel vigorously attacked Dott's credibility.    Counsel highlighted the fact that Dott had been taking drugs and could not recall certain specific details , and that it was Lemon who told them to pack their things as they were moving to a different motel.[94]    He further highlighted that Thomas gave Dott and Stallworth the Xanax.[95]    Dott admitted that she did not hear Achelles make any statements about a murder.[96]    Dott testified that Thomas made the call to buy the Xanax.[97]    Defense counsel further highlighted that, while Dott testified at trial that Achelles said the flip phone was in the water, she previously stated

---

[94]  State Rec., Vol. 12 of 16, Trial Transcript, pp. 181-82, 3/18/15.

[95]  *Id.*, at p. 183.

[96]  *Id.*, at pp. 185-86.

[97]  *Id.*, at pp. 187-88.

in an audio recorded statement, which was played for the jury, that Thomas threw the phone in the water.[98]    Dott admitted she had no idea what the men were going to do when they left to Super 8 Motel, Achelles did not say where he was going, and she was not with him when he left.[99]    Defense counsel also played her statement for the jury that Thomas went to get the pills, and that it was Thomas, not Achelles, looking on the computer for an article about the murders.[100]    The state court's denial of relief on this claims was not contrary to or an unreasonable application of *Strickland*.    Achelles is not entitled to relief on this claim.

Finally, Achelles claims he was denied effective assistance of counsel when trial counsel failed to formulate a defense.    Achelles appears to contend that his trial counsel should have presented a defense of mistaken identity, actual innocence, and/or reasonable doubt.    He points to the conflicting testimony of the three known eyewitnesses.

A defendant's desire to have a specific defense theory presented does not amount to ineffective assistance of counsel on federal habeas review.    *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689) ("[C]ourts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' ").    Instead, "counsel has wide latitude in deciding how best to represent a client."    *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003).

To prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one. *See, e.g.*, *Otero v. Louisiana*, Civ. Action No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18,

---

[98]  *Id.*, at pp. 188-89, 193.

[99]  *Id.,* at p. 193.

[100]  *Id.*, at pp. 194-95.

2013); *Higgins v. Cain*, Civ. Action No. 09-2632, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011).

In this case, counsel actually presented a defense of mistaken identity and reasonable doubt. The state-court record reflects that Achelles's counsel vigorously and meaningfully challenged the State's evidence at trial. During trial, defense counsel attacked the credibility of the State's witnesses and the physical evidence connecting Achelles to the crime scene. As discussed above, there is no evidence that any defense witnesses were available to testify and that they would have done so in a manner beneficial to the defense. Defense counsel therefore cannot be deemed ineffective for attempting to prevent the State from proving its case beyond a reasonable doubt through effective defense cross-examination of the State's witnesses. The fact that the defense was not successful, *i.e.*, that Achelles was convicted as charged, does not mean that counsel's actions leading to the conviction were deficient. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 (citations omitted). Achelles's claim of ineffective assistance of counsel for failing to formulate a defense has no merit.

Achelles has not made a showing that counsel's strategy fell below constitutional standards, or that the verdict would have been different had counsel pursued a different theory. For these reasons, the state court's denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Achelles is not entitled to relief.

b.    *Effective Assistance of Appellate Counsel: Claim One*

Finally, Achelles claims that he was denied effective assistance of counsel on appeal when his appellate counsel failed to raise an issue related to the Confrontation Clause. Achelles also claims that his appellate counsel was ineffective in failing to raise on appeal a claim of insufficient evidence with regard to the murder charges.

Achelles raised these claims in an application for post-conviction relief.    The trial court found that Achelles could have raised the issues himself in his pro se supplemental brief he filed on direct appeal.[101]    The court further found that the statements of which Achelles complained were admissible under law and that the issue would not have been successful on appeal.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.    *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel.    *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997).    In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant."    *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal."    *Duhmel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992).    However, failing to raise every meritorious claim on appeal does not make counsel deficient. *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis*

---

[101]    State Rec., Vol. 4 of 16, State District Court Order denying post-conviction relief, p. 1, 12/17/18.

*v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) ).    Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." *Id*. at 1037.    Courts give great deference to professional appellate strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues...."    *Jones v. Barnes*, 463 U.S. 745 (1983).    This is true even where the weaker arguments have merit.    *Id*. at 751–2.    Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.    *See*, *e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

<u>a.</u>  <u>Confrontation Clause</u>

Achelles argues that appellate counsel should have advanced an argument that the state trial court wrongfully allowed hearsay statements allegedly made by co-defendant Jason Thomas to be admitted into evidence through the testimony of Calvenia Dott and Abby Stallworth in violation of his rights to confrontation and cross-examination, and *Crawford v. Washington*, 541 U.S. 36 (2004).

During Dott's testimony, defense counsel raised a hearsay objection when the prosecutor asked her whether she heard Achelles or Thomas speak about the murder.[102]    A lengthy bench conference was held during which the prosecution argued that Thomas's statements were not hearsay as they were *res gestae* of the event and, further, constituted co-conspirator statements made during the wake of a crime and when they were hiding after

---

[102]  State Rec., Vol. 12 of 16, Trial Transcript, at p. 141, 3/18/15.

the murders had occurred.[103]     The defense responded that the co-defendants had not been charged with conspiracy.[104]     The trial court found that the State had provided a prima facie case that there was a conspiracy to commit murder and that the co-defendants made statements in furtherance of the conspiracy.[105]     The court further found that the statements were *res gestae* in attempting to cover up the murder shortly after it occurred, and therefore allowed testimony regarding statements made by Thomas.[106]     Defense counsel objected and distinguished the case relied upon by the court.[107]     The court found that a conspiracy did not need to be charged and, again, that the statements were also *res gestae*.[108]     The court also found that neither *Bruton*[109], which Achelles does not raise, nor *Crawford* applied because they were non-testimonial statements.[110]

Thereafter, Dott testified that when they all watched the news broadcast regarding the murder, Thomas stated that he did not know there was a third person in the car.[111]

---

[103]  *Id.*, at pp. 142-46, 151-57.

[104]  *Id.*, at p. 157.

[105]  *Id.*, at pp. 158-59.

[106]  *Id.*, at p. 159.

[107]  *Id.*, at pp. 159-60.

[108]  *Id.*, at pp. 160-61.

[109]  In *Bruton v. United States*, the Supreme Court held that where a co-defendant's confession was admitted at a joint trial and the co-defendant-declarant did not take the stand, the defendant was denied his constitutional right of confrontation, even though the jury was instructed not to consider the confession by the co-defendant as evidence against the defendant.    391 U.S. 123, 127 (1968).

[110]  State Rec., Vol. 12 of 16, Trial Transcript, at p. 167, 3/18/15.

[111]  *Id.*, at p. 169.

According to Dott, Thomas further stated, "I got that boy."[112]    She testified that in response to a statement Thomas made about his foot, Achelles said, "I told you to get rid of them shoes."[113]

Stallworth testified that Thomas stated, "I killed that boy," and told them that he hurt his toe or his knee when he jumped over a fence.[114]    She further testified that either Achelles or Lemon told them that the flip phone was "swimming with the fishes."[115] Stallworth testified that Thomas stated that they "didn't get nothing."[116]

Initially, as noted by the trial court, Achelles had the opportunity to raise this issue in his pro se supplemental brief filed on direct appeal.[117]    Achelles raised two other issues, one relating to *Daubert* and a second relating to the denial of the defense's motion to sever offenses.[118]    He did not raise any issue regarding his right to confront witnesses nor does he provide any reason why he failed to do so.

In any event, the Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."    U.S. Const. amend. VI.    A Confrontation Clause claim presents a mixed question of law and fact. *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).    Therefore, this Court must defer

---

[112]  *Id.*, at pp. 169-70.

[113]  *Id.*, at p. 170.

[114]  *Id.*, at pp. 220-21.

[115]  *Id.*, at p. 221.

[116]  *Id.*

[117]  State Rec., Vol. 13 of 16, Pro Se Supplemental Brief, 16-KA-0170, 9/1/16.

[118]  *Id.*

to the state courts' decision rejecting the claim unless petitioner demonstrates that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1).

In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the Supreme Court held that the Confrontation Clause prohibits admission of testimonial hearsay against a defendant unless the witness is unavailable at trial and the defendant had a prior opportunity to cross-examine the witness.    Simply put, "the Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him."    *United States v. Gonzales*, 436 F.3d 560, 576 (5th Cir. 2006).

Only testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause.    *Crawford*, 541 U.S. at 51.    The testimonial character of the statement is what separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.    *Davis v. Washington*, 547 U.S. 813, 821 (2006).[119]

---

[119]   In *Davis*, 547 U.S. at 822, the United States Supreme Court explained, at least in part, the difference between "nontestimonial" and "testimonial" statements:

> Without attempting to produce an exhaustive classification of all conceivable statements-or even all conceivable statements in response to police interrogation-as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made *in the course of police interrogation* under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.    They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the *primary purpose of the interrogation* is to establish or prove past events potentially relevant to later criminal prosecution (emphasis added).

For a statement to be "testimonial" under *Crawford*, it must have been made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."    *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009).    Courts have regularly interpreted the word "trial" to mean a subsequent criminal prosecution, and the relevant point of view is of the declarant at the time he makes the statement.    *See, e.g.*, *United States v. Smalls*, 605 F.3d 765, 777 (10th Cir. 2010) (recognizing that a statement is testimonial "if a reasonable person in the position of declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime").    The *Crawford* court provided a non-exhaustive list of testimonial statements that focused on statements made in court-like proceedings or to law enforcement, including affidavits, custodial examinations, depositions, prior testimony, and confessions.    *See Crawford*, 541 U.S. at 51-52.    Statements made to individuals who are not "principally charged with uncovering and prosecuting criminal behavior" are not "categorically outside the Sixth Amendment," but they are "significantly less likely to be testimonial than statements given to law enforcement officers."    *Ohio v. Clark*, 135 S. Ct. 2173, 2182 (2015).

Statements about the commission of a crime made to friends or acquaintances in an informal setting are nontestimonial and the admission of such statements does not violate the Confrontation Clause.    *United States v. George*, Civ. Action No. 17-201, 2019 WL 4194526, at *6 (E.D. La. Sept. 9, 2019); *State v. Price*, 16–899 (La. 3 Cir. 4/5/17), 216 So.3d 304, 310 .    Here, the statements made by Thomas were not made in a formal setting, were not made to prosecutors, prison officials or police, and clearly were not made with an understanding that the inculpatory statements could be considered a confession by or

prejudicial to him or Achelles.    Rather, the statements were made in a motel room to a group of friends.

As a result, Achelles has not met his burden to show that any claim relating to the Confrontation Clause was "clearly stronger" than the issue actually presented on appeal by counsel or that there is a reasonable probability that the appellate court would have vacated or reversed the trial court judgment if only the proposed claim had been asserted. Therefore, this ineffective assistance of appellate counsel claim fails.

b.  Sufficiency of the Evidence

Achelles's final claim of ineffective assistance is that his appellate counsel failed to present the issue of insufficient evidence on appeal.

Because this claim is brought to this court as a question of effective assistance of appellate counsel, *Strickland* supplies the standard of review, not *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).    In *Jackson*, the United States Supreme Court held that, in assessing such a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781.    Accordingly, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)) (emphasis added).    Even if the court were to consider *Jackson* in terms of whether appellate counsel was deficient, Achelles has failed to meet that burden.

Achelles was charged with and convicted of second-degree murder.    Second-degree murder is defined in relevant part by Louisiana law as "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm."    La. Rev. Stat. § 14:30.1(A)(1).    The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act."    La. Rev. Stat. § 14:10(1).    Under Louisiana law, intent need not be proven directly, but may be inferred from the actions of the defendant and the circumstances surrounding those actions.    *State v. Sharlhorne*, No. KA881872 (La. App. 1 Cir. 12/19/89), 554 So. 2d 1317, 1321; *State v. Tate*, 2001–KA–1658 (La. 5/20/03), 851 So. 2d 921, 930 (citing *State v. Brooks*, 86–KA–1559 (La. 4/6/87), 505 So. 2d 714, 717).    Specific intent to kill can also be implied by the intentional use of a deadly weapon, such as a knife or gun. *State v. Collins*, 2009 KA 2102 (La. App. 1 Cir. 6/28/10), 43 So.3d 244, 251 (citing *State v. Brunet* 95 KA 0340 (La. App. 1 Cir. 1996), 674 So. 2d 344, 349).

Achelles does not specifically contest the sufficiency of the proof related to the essential statutory elements of the offenses for which he was convicted, but rather contends that the State failed to prove beyond a reasonable doubt his identity as the perpetrator. Achelles claims that there was no physical evidence linking him to the murders.

Under Louisiana law, the state is required to prove the identity of the perpetrator in addition to the elements of the crime.    *State v. Draughn*, 2005–KA–1825 (La. 1/17/07), 950 So. 2d 583, 593; *State v. Thomas*, 15–KA–759 (La. App. 5 Cir. 5/12/16), 192 So. 3d 291, 303; *State v. Ingram*, 04-KA-551 (La. App. 5 Cir. 10/26/04), 888 So.2d 923, 926.    Where the key issue is identification, the State is required to negate any reasonable probability of misidentification.    *State v. Vasquez*, 98-KA-898 (La. App. 5 Cir. 2/10/99), 729 So.2d 65, 69.

43

Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction.    *See United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983); *State v. Neal*, 2000–KA–0674 (La. 6/29/01), 796 So. 2d 649, 658; *State v. Williams*, 08–KA–272 (La. App. 5 Cir. 12/18/08), 3 So. 3d 526, 529; *see also Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012).    Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination.    *State v. Thomas*, 08–KA–813 (La. App. 5 Cir. 4/28/08), 13 So. 3d 603, 607.

The relevant evidence presented at trial was more than sufficient to establish, and Achelles does not contest, that the victims died after being shot multiple times.    To prove Achelles's identity as the perpetrator of the crimes, the State introduced evidence from multiple witnesses.

Detective Thomas Gai, who responded to the scene of the double homicide, recovered an assortment of 9 millimeter and .45 caliber spent cartridges and surveillance video from two apartment complexes.[120]    One video showed a blue vehicle park and two persons get out of the vehicle and walk down the street.[121]    According to Gai, the videos corroborated that two persons shot the victims, and also showed the persons fleeing and their distance from each other, which Gai stated gave credibility to some statements provided by witnesses later in the investigation.[122]    Gai explained that one video corroborated information that

---

[120]    State Rec., Vol. 13 of 16, Trial Transcript (con't), at 247, 252, 3/18/15.

[121]    *Id.*, at p. 256.

[122]    *Id.*, at p. 260.

one suspect had hurt himself and ran slower than the other suspect.[123]    Through the investigation, Gai linked a phone number that had contacted one of the victims to a backpage.com advertisement for prostitutes by the names of "Magic" and "Honey."[124]    The prostitutes, Abby Stallworth and Calvenia Dott, were arrested during a sting operation.[125] Through separate interviews, the women provided the names "Hurk," "Jay," and "Ace," who the police were able to determine were Achelles, Thomas and Lemon.[126]    Achelles, had brought the women to the sting in a blue Dodge Avenger and was charged with pandering based on the statements of the women and his own statement.[127]

Gai interviewed Achelles, who had waived his *Miranda* rights, and the statement was played for the jury.[128]    Achelles claimed to be with Lemon and Daintia Brock at McDonald's restaurant the time of the murders.[129]    However, surveillance video from the restaurant did not show Achelles's presence and both Lemon and Brock told police Achelles was not with them.[130]    Achelles's made a statement that Thomas hurt his toe, which Gai explained was confirmed by other witnesses and explained why surveillance video showed why the two

---

[123] *Id.*, at p. 262.

[124] *Id.*, at pp. 265-269.

[125] *Id.*, at pp. 269-272.

[126] *Id.*, at pp. 272-73.

[127] *Id.*, at p. 273.

[128] *Id.*, at pp. 277-281.

[129] *Id.*, at pp. 281, 286-87.

[130] *Id.*, at pp. 287-91

suspects were separate when fleeing the scene of the murders.[131]   Achelles admitted that he possessed a gun and was a convicted felon.[132]   Achelles's cell phone number was in the phone log for the flip phone that had been used to call one of the victim's phones.[133] Minutes after the murder, the flip phone was utilized to call Lemon and Thomas's girlfriend.[134]   Given the location of the phone, the police believed the suspects threw it in the Mississippi River.[135]

Daintia Brock testified that she was friends with Achelles, Thomas, and Lemon.[136] She testified that she, Sheranda, and Lemon left the Super 8 Motel in Sheranda's Lexus around 5:15 a.m. and went to McDonald's restaurant.[137]   She testified that Achelles was not with them.[138]   She identified surveillance photographs from McDonald's restaurant depicting herself, Sheranda and Lemon.[139]   The next time she saw Achelles he was at the London Lodge.[140]

Calvenia Dott was arrested for prostitution with Abby Stallworth.[141]   She testified

---

[131]  *Id.*, at p. 296.

[132]  *Id.*, at p. 305.

[133]  *Id.*, at pp. 281-84, 300-01.

[134]  *Id.*, at pp. 284-86.

[135]  *Id.*, at p. 301.

[136]  State Rec., Vol. 12 of 16, Trial Transcript, p. 77, 3/18/15.

[137]  *Id.*, at pp. 82-83.

[138]  *Id.*, at pp. 82, 85, 102.

[139]  *Id.*, at pp. 84-85.

[140]  *Id.*, at pp. 86, 100.

[141]  *Id.*, at pp. 105-06.

that she and Stallworth stayed with Achelles, Thomas and Lemmon at the Super 8 Motel, and that Thomas gave them a phone number to use for their prostitution advertisements.[142]    In the early morning hours of December 30, 2013, Achelles and Thomas met someone driving a black Charger who was selling pills.[143]    After returning, Thomas and Achelles utilized the phone utilized for the prostitution advertisements to call the man to get more pills and then left with guns and the flip phone.[144]    Dott and Stallworth attempted to call the flip phone between 6:40 a.m. and 7:01 a.m., but were unable to reach Thomas or Achelles.[145] Eventually, Lemon returned to the Super 8 Motel and told them to pack their things as they were moving to a different hotel, but left without them.[146]    A female came and picked them up and brought them to a run-down hotel where Achelles, Thomas, and Lemon were staying.[147]    Dott testified that the men were not acting normal and were quiet.[148]

The news reported two murders of people in a black Charger.[149]    When the news broadcaster advised that there had been a third person in the car, Thomas stated that he did not know there was a third person.[150]    According to Dott, Thomas said, "I got that boy."[151]

---

[142]  *Id.*, at pp. 117, 119-22.

[143]  *Id.*, at pp. 124-26.

[144]  *Id.*, at pp. 124-128, 131, 134, 140.

[145]  *Id.*, at p. 131.

[146]  *Id.*, at pp. 131-32.

[147]  *Id.*, at p. 132.

[148]  *Id.*, at p. 133.

[149]  *Id.*, at pp. 135 139-40.

[150]  *Id.*, at p. 169.

[151]  *Id.*, at pp. 169-70.

Thomas appeared injured and made a comment about his foot to which Achelles responded, "I told you to get rid of them shoes."[152]    Thomas gave Achelles his shoes and Achelles took them outside and returned without them.[153]    When Dott and Stallworth asked about the flip phone, Achelles told the phone was thrown in the river.[154]

At the time of trial, Abby Stallworth was in jail because she previously failed to appear in court because she was afraid after Achelles wrote her a letter through which she felt he was sending her a message.[155]   She testified that she and Dott had met Achelles and Thomas on their first trip to New Orleans in December 2013.[156]   Achelles, Thomas, and Lemon picked Dott and Stallworth up in Mississippi in a blue four-door car and brought them back to New Orleans after Christmas where they stayed in a Super 8 Motel.[157]    On December 30, 2013, Thomas came into their room and said he met a "dude" also staying at the Super 8 who had some Xanax and "stuff" and drove a black Charger.[158]    Thomas went out and bought a few and came back.[159]    According to Stallworth, Thomas said that he saw pills in the car and told Achelles he wanted to rob the man.[160]

---

[152]  *Id.*, at p. 170.

[153]  *Id.*, at pp. 170, 185, 200.

[154]  *Id.*, at pp. 170, 188-89.

[155]  *Id.*, at pp. 202-07.

[156]  *Id*, at pp. 207-11.

[157]  *Id.*, at pp. 211-12.

[158]  *Id.*, at pp. 212-13.

[159]  *Id.*, at p. 213.

[160]  *Id*, at 213-14, 230-31.    .

Stallworth recalled that Thomas used a flip phone to call the man.[161]    He and Achelles then left carrying guns.[162]    When Thomas and Achelles did not return, Stallworth and Dott utilized the hotel room phone to attempt to call Achelles and Thomas as well as the flip phone, but were not successful.[163]    In the morning, Lemon returned and told them they had to move to another location.[164]    A female in a brown car drove Stallworth and Dott to the London Lounge where Achelles was waiting, and Thomas and Lemon pulled up in a blue car a few minutes later, returning from Thomas's court appearance.[165]    They watched the news and afterward used a computer to find an article about a double murder.[166]    Thomas and Achelles discussed that they killed the people and that they did not know that there was a third person in the car.[167]    According to Stallworth, Thomas said, "I killed that boy" and he hurt his big toe or scraped his knee jumping over a fence.[168]    Stallworth testified that Achelles said, "I shot too."[169]    Stallworth asked them about the flip phone and either Achelles or Lemon said it was "swimming with the fishes."[170]    Thomas admitted that they

---

[161] *Id.*, at. p. 215, 231.

[162] *Id.*, at p. 216.

[163] *Id.*, at pp. 216-18.

[164] *Id.*, at p. 217.

[165] *Id.*, at pp. 219, 230.

[166] *Id.*, at pp. 219-20.

[167] *Id.*, at p. 220.

[168] *Id.*, at 220, 231.

[169] *Id.*, at pp. 221, 231.

[170] *Id.*, at p. 221.

did not "get anything" and Lemon stated, "Y'all are stupid."[171]

Lawrence Brookes, an expert in mechanical engineering and automotive design, testified that after watching three different surveillance videos and viewing a number of still photographs, he determined that the vehicle the perpetrators were driving was a Dodge Avenger.[172]    He testified that he was one hundred percent confident and that there was no doubt in his mind that the vehicle was a Dodge Avenger.[173]    He further testified that he was positive the vehicle was not a Nisan Altima.[174]

To the extent that Achelles is arguing that the jurors should not have found the State's witnesses credible, and should have believed the his testimony as well as that of the other defense witnesses, that simply is not for this Court to say.    Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility.    *See Schlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ("[U]nder *Jackson* [*v. Virginia*] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93-5340, 24 F.3d 240, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the *Jackson* standard for habeas relief."); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. April 11,

---

[171] *Id.*

[172] State Rec., Vol. 11 of 16, Trial Transcript (con't), at pp. 197-207, 3/17/15.

[173] *Id.*, at p. 206.

[174] *Id.*, at p. 238.

2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

The denial of relief on this claim was not contrary to or an unreasonable application of *Strickland* or *Jackson*.    Achelles is not entitled to relief.

## B.    *Batson*/Gate-Keeping Obligation/Failure to Sever Offenses: Claim Three

Achelles claims that the trial court denied him his right to a fair trial by denying his *Batson* challenge to the State's exercise of peremptory challenges.    He further claims the trial court abused its discretion in failing to ensure through the *Daubert* "gate-keeping" obligation that the State's expert was properly qualified.    Finally, he claims that the trial court abused its discretion in denying the defense motion to sever offenses.

Achelles raised these claims in his direct appeal.

### 1.    *Discriminatory Use of Peremptory Challenges*

Achelles claims that the trial court erred in denying his *Batson* challenges when the State exercised certain peremptory challenges. [175]    He did not brief the issue in his memorandum supporting his habeas petition.    However, his appellate counsel claimed on direct appeal that the State excused five female jurors on the basis of race.[176]

The Louisiana Fifth Circuit rejected this claim reasoning

> In this assignment of error, defendant argues that the trial court erred in denying his *Batson* challenges because the State exercised its peremptory challenges in a discriminatory manner to exclude five prospective jurors: Samekey Lomax, Tyneisha Chevalier, Tyreon Edmond, Charlotte Taylor, and Alicia Rice–Jackson.    Defendant contends that the State's race-neutral reasons for excusing these

---

[175]    Rec. Doc. 5, p. 8.

[176]    State Rec., Vol. 13 of 16, Appeal Brief, 16-KA-0170, 6/27/16.

African–American jurors were not sufficient and maintains that he met his burden of proving discriminatory intent.

The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges.    In *Batson v. Kentucky*, 476 U.S. 79, 94–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges of prospective jurors were based on race. First, the defendant challenging the peremptory strike must establish a prima facie case of purposeful discrimination.    Second, if a prima facie showing is made, the burden shifts to the State to articulate a neutral explanation for the challenge.    Third, the trial court then must determine if the defendant has carried the ultimate burden of proving purposeful discrimination.

The *Batson* decision is codified in La. C.Cr.P. Art. 795(C), which provides that no peremptory challenge made by the State or the defendant shall be based solely upon the race of the juror.    *State v. Massey*, 11–357 (La. App. 5 Cir. 3/27/12), 91 So.3d 453, 467, *writ denied*, 12–991 (La. 9/21/12), 98 So.3d 332.    Article 795(C) further provides that if an objection is made that the State or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race-neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror.

Applying this analysis to the instant case, we find that the trial court did not abuse its discretion in denying defendant's *Batson* challenges.    The first step of our inquiry, whether defendant made a prima facie showing of purposeful discrimination, is rendered moot since the State offered race-neutral explanations.    *See Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).

The second step of the analysis, whether the State articulated a race-neutral reason for the challenge, does not demand an explanation that is persuasive or even plausible.    The race-neutral explanation must be one that is clear, reasonably specific, legitimate, and related to the case at bar.    At the second step of the *Batson* inquiry, the issue is the facial validity of the prosecutor's explanation.    Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam); *State v. Massey*, 91 So.3d at 468.

In the present case, after the State exercised a peremptory challenge on a fifth African–American female juror, defendant raised a *Batson* challenge. Without a request from the trial court, the State provided reasons for the challenges. In particular, the State noted that Ms. Rice–Jackson and Ms. Taylor rated the police a "5" on a scale of 1 to 10. In addition, the State articulated that they were both individuals who responded very quickly on the question of wanting DNA. With regard to Ms. Lomax, the State articulated that she "said she was not sure if she could convict on a life sentence" and "indicated she had class." The State provided that Ms. Chevalier "also said she was not sure if she could convict based on a life sentence," and that Ms. Edmond "said the same statement about not being able to convict based on a life sentence." The trial court found all these explanations to be race-neutral. We find no reason to disturb those determinations by the trial court. Accordingly, we proceed to the third step of the *Batson* analysis, which focuses on whether the defendant has proven purposeful discrimination.

In determining whether a defendant has met his burden of showing purposeful racial discrimination in the State's exercise of peremptory challenges, the proper question is whether the proof offered by the defendant, when weighed against the State's proffered race-neutral reasons, is strong enough to convince the trier of fact that the claimed discriminatory intent is present. *State v. Wilson*, 09–170 (La.App. 5 Cir. 11/10/09), 28 So.3d 394, 405, *writ denied*, 09–2699 (La. 6/4/10), 38 So.3d 299. A trial judge's findings on a claim of purposeful discrimination are entitled to great deference by the reviewing court because they depend largely on credibility evaluations. *State v. Florant*, 12–736 (La. App. 5 Cir. 5/23/13), 119 So.3d 635, 642, *writ denied*, 13–1451 (La. 1/10/14), 130 So.3d 319. Credibility can be measured by factors including the prosecutor's demeanor, how reasonable or how improbable the explanations are, and whether the proffered reason has some basis in accepted trial strategy. Because the trial judge has the advantage of observing the characteristics and demeanor of the attorneys and prospective jurors, the trial court occupies the best position for deciding whether a discriminatory objective underlies the peremptory challenges. *State v. Massey*, 91 So.3d at 469.

Based on our review of the record, and in particular, the voir dire transcript, we find that defendant failed to meet his burden of proving purposeful discrimination. We note that when defendant made his *Batson* objection, he merely commented, "That's five black females gone." No additional facts beyond the raw number of strikes were provided by defendant. We also note that our review of this

issue is made difficult because other than the five African–American jurors named in this assignment, the record does not reflect the racial makeup of other members of the venire panels or of the jury that was ultimately impaneled.    Therefore, we find that the trial court did not abuse its discretion in denying defendant's *Batson* challenges.[7][177]

> For the first time, defendant asserts on appeal that jurors Rice–Jackson and Taylor were struck on account of their race because another prospective juror, Lynn Adams, was retained on the petit jury despite offering an answer similar to Jackson and Taylor's answer regarding their rating of the police.    Also, for the first time on appeal, defendant argues that jurors Lomax, Edmond, and Chevalier were struck because of their race because another prospective juror, David Miner, was retained on the petit jury despite offering an answer similar to Lomax, Edmond, and Chevalier regarding their answer about mandatory life sentences.    These assertions were not presented to the trial court, and therefore, defendant cannot now present them for the first time on appeal.    *See* La. C.Cr.P. Art. 841; *see also State v. Florant*, 119 So.3d at 645.

The Louisiana Supreme Court likewise denied relief without citing additional reasons.

There were two venire panels.    The State used three out of its four peremptory challenges to exclude three African-American female jurors, No. 423, No. 150, and No 96.[178] Defense counsel did not object at that time.[179]    In the second venire panel, the State used four of its peremptory challenges to strike two more African-American female jurors, No. 193 and No. 173.[180]

At that point, defense counsel raised a *Batson* challenge on the removal of the five female African-American females.[181]    The prosecutor said he struck Juror Nos. 173 and 193 because they both rated the police a five on a scale of one to ten and both responded very

---

[177]    *Achelles*, 16-170, 208 So. 3d at 1074-75; State Rec., Vol. 13 of 16.

[178]    State Rec., Supp. Vol. 2 of 2, Voir Dire Transcript (con't), pp. 187, 189, 3/16/15.

[179]    *Id.*

[180]    *Id.*, at pp. 346-47.

[181]    *Id.*, at 347-48.

quickly that they wanted DNA evidence.[182]    The prosecutor explained that Juror Nos. 96, 150 and 423 stated that they were not sure they could convict on a life sentence and that Juror No. 423 also had a class to attend.[183]    The trial court accepted those reasons and denied the defense's *Batson* challenge.[184]    The defense asked the trial court to note an objection for the record.[185]

In *Batson*, the Supreme Court has held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause.    *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).    The United States Supreme Court has established a three-step analysis for a *Batson* challenge:

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry.    First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.    476 U.S. at 96-97, 106 S.Ct. 1712.    Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.    *Id.*, at 97-98, 106 S.Ct. 1712.    Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible;" so long as the reason is not inherently discriminatory, it suffices.    *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam).    Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.    *Batson*, *supra*, at 98, 106 S.Ct. 1712; *Miller-El v. Dretke*, 545 U.S. [231, 251-52], 125 S.Ct. 2317, 2331-32, 162 L.Ed.2d 196 (2005).    This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."    *Purkett*, *supra*, at 768, 115 S.Ct. 1769.

---

[182]  *Id.*, at pp. 347-48.

[183]  *Id.*, at pp. 348-49.

[184]  *Id.*, at p. 350

[185]  *Id.*

*Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006); *accord Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).

Achelles's arguments focus on the second and third *Batson* steps.    With respect to step two, "[a] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror.    At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation.    Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (emphasis added).    Achelles contends the prosecutor's asserted race-neutral excuses were unfounded.    However, at this step, the Court need not weigh plausibility or persuasiveness, but only *facial* validity.    Here, the prosecutor's stated reasons for striking the five jurors were facially neutral and not inherently discriminatory.    Juror No. 423 explained that she had a class with a midterm examination and expressed reservations about whether she could convict knowing Achelles faced a life sentence.[186]    Juror No. 150 twice stated that she was not sure she could convict due to the life sentence.[187]    Juror No. 96 expressed similar reservations.[188]    Juror No. 193 rated the Jefferson Parish Sheriff's Office a five out of ten and expressed a desire for DNA evidence.[189]    Juror No. 173 similarly rated the Sheriff's Office a five out of ten.[190] Obviously, those reasons are *facially* valid and nondiscriminatory.

---

[186]    State Rec., Supp. Vol. 1 of 2, Voir Dire Transcript, pp. 43, 50-51, 80, 3/15/16.

[187]    *Id.*, at p. 81.

[188]    *Id.*, at p. 82.

[189]    State Rec., Supp. Vol. 2 of 2, Voir Dire Transcript (con't), pp. 275, 280, 3/15/16.

[190]    *Id.*, at p. 286.    The record does not specifically reflect that Juror No. 173 wanted DNA

Thus, the Court's inquiry proceeds to the third step and the ultimate question of whether intentional discrimination in fact motivated the State's peremptory strikes.    "This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."    *Rice v. Collins*, 546 U.S. 333, 338 (2006). As noted, the trial court in the instant case found that the prosecutor did not exercise his peremptory challenges against the five African-American women in a discriminatory manner.

A state court's finding under *Batson's* third step is a factual determination and must be reviewed under the AEDPA's specific and highly deferential standard of review applicable to such determinations.    As the Supreme Court has explained:

> Under AEDPA, ... a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2).    Thus, a federal habeas court can only grant [the petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge. *State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence."*    § 2254(e)(1).

*Rice*, 546 U.S. at 338-39 (2006); *accord Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) (*Batson's* third step "turns on factual determinations, and, in the absence of exceptional circumstances, we defer to state court factual findings unless we conclude that they are clearly erroneous." (quotation marks omitted)); *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005) ("A state trial court's finding of the absence of discriminatory intent is a pure issue

---

evidence, however, the prosecutor noted that "a few people" raised their hands in response to a belief that there should be DNA in "pretty much every case."    *Id.*, at p. 275.

of fact that is accorded great deference and will not be overturned unless clearly erroneous." (quotation marks omitted)).    Therefore, even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, ... on habeas review that does not suffice to supersede the trial court's credibility determination."    *Rice*, 546 U.S. at 341-42*; accord Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

When evaluating the persuasiveness of a prosecutor's proffered justification, the trial court must be mindful that "[a] prosecutor's intuitive assumptions, inarticulable factors, or even hunches can ... be proper bases for rejecting a potential juror."    *United States v. Thompson*, 735 F.3d 291, 297 (5th Cir. 2013).

Also:

> [C]ourts do not assess whether counsel's reason is suspect, or weak, or irrational. Instead, courts address whether counsel is telling the truth in his or her assertion that the challenge is not race-based. In determining whether a prosecutor discriminated on the basis of race, a court should consider the totality of the relevant facts.

*Id.* (citations and quotation marks omitted).

The State posed logical reasons for excluding the prospective jurors and each of those reasons was found to be race-neutral.    Achelles points to answers of two others in the venire.    He argues that Juror No. 130, a female, "presumably white," who also rated the Sheriff's Office a five out of ten, but was selected as a juror.[191]    He also argues that Juror No.

---

129, "presumably a white male" expressed similar reservations about a life sentence, yet was deemed acceptable by the prosecution, albeit struck by the defense.[192]

A petitioner can sometimes establish discriminatory motivation by showing that the prosecutor's proffered reasons for the challenge applied to other jurors who were not challenged. *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step.").

Significantly, there is no evidence of the races of either Juror No. 129 or Juror No. 130. In fact, there is no evidence of the racial composition of the venire or the racial composition of the final trial jury.    Further, while Juror No. 129 initially stated that he "sincerely believe[d] in redemption, and people can change, " he stated he could return a guilty verdict on a charge requiring a life sentence if the prosecution proved its case.[193]    Juror No. 130, while rating the Sheriff's Office a five, said she could give a police officer a "fair shake" if one were to testify at trial.[194]

The law requires that Achelles ultimately do more than just object to the reason offered or to the trial court's finding of neutrality.    Instead, as previously explained, Achelles must rebut the presumption of correctness by clear and convincing evidence in order to show purposeful discrimination.    *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003). Achelles has not offered to this Court clear and convincing evidence to establish that the

---

[192]  *Id*., at pp. 21-22.

[193]  State Rec., Supp. Vol. 1 of 2, Voir Dire Transcript, pp. 77-78, 3/16/15.

[194]  State Rec., Supp. Vol. 2 of 2, Voir Dire Transcript (con't), pp. 264, 286, 3/16/15.

findings by the trial court were unreasonable, or not supported by the record, in such a manner as to overcome the presumption of correctness under the AEDPA. Accordingly, applying the deferential standard of review mandated by the AEDPA, this Court should deny his *Batson* claim.

### 2.    *Daubert Gatekeeping*

Achelles claims that the trial court abused its discretion in failing to ensure that *Daubert's* "gate-keeping" obligation was properly applied.[195]    Achelles did not brief this issue in his memorandum supporting his habeas petition, but he raised the issue on direct appeal.[196]

The Louisiana Fifth Circuit in rejecting the issue found:

> In his first *pro se* assignment of error, defendant argues that the trial court abused its discretion in qualifying Mr. Brookes as an expert in mechanical engineering and automotive design without inquiring into the relevance and reliability of the testimony as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

> In the present case, the State noticed its intent to call Lawrence Brookes as "an expert in the Dodge Automobile Product Design." The State further asserted that this expert, in his testimony, would identify the make of a car seen in video surveillance.    On the first day of trial, prior to the beginning of witness testimony, the court conducted a *Daubert* hearing regarding the expert testimony of Lawrence Brookes.

> At the hearing, Mr. Brookes testified regarding his educational background and extensive work experience in the automotive industry. Mr. Brookes had a total of almost twenty-nine years of experience working for Fiat Chrysler Automobiles in numerous capacities.    His position, at the time of trial, was the head of product analysis and regulatory processes.    He also held certifications in accident reconstruction and vehicle fire and investigation.    He testified that

---

[195]  Rec. Doc. 5, p. 8.

[196]  *Achelles*, 16-170, 208 So. 3d at 1076-79; State Rec., Vol. 13 of 16.

with his many years of experience with the company, he was very familiar with any car design that "we've manufactured in North America for the past 30, 40 years." He testified that he was asked to review video footage and still photographs to identify the make of the vehicle depicted therein. Mr. Brookes concluded that the vehicle depicted was "for sure" a Dodge Avenger, most likely a model-year 2012 or later. In making this determination, he pointed out specific features of the vehicle depicted which indicated to him that it was a Dodge Avenger. For example, the headlamps were "square and flat to the front of the vehicle," the tail lights "line[d] up like a Dodge Avenger," and the unique "bright blue" color was consistent with colors offered in model-years 2012 to 2014.

Most importantly, Mr. Brookes described that the vehicle depicted had the Dodge Avenger's back door, which was "very unique" and was "like no other car on the market." He stated that the combination of all these elements together with his many years of experience enabled him to "deduce from that one video" that the vehicle was "a Dodge Avenger and no other car." Also for thoroughness, even though he was "a hundred percent sure," he compared the vehicle depicted to exemplars of other popular mid-sized cars, including a Chevy Malibu, a Chevy Cruze, a Honda Accord, and a Nissan Altima, but based on their features, he again concluded it was a Dodge Avenger. Moreover, Mr. Brookes related that he owned two Dodge Avengers and "look[ed] at them every day in [his] driveway."

After considering the testimony of Mr. Brookes and the arguments of counsel, the trial found that Mr. Brookes was "certainly an expert in mechanical engineering and auto design" and allowed him to testify at trial in accordance with the testimony offered at the hearing. Defendant now argues that the trial court abused its discretion in qualifying Mr. Brookes as an expert in mechanical engineering and auto design when the court failed to apply *Daubert's* "gatekeeping obligation," requiring an inquiry into both relevance and reliability. He contends that Mr. Brookes' opinion was not based on scientific testing, principles, or methodology and that it was unreliable and had no probative value because it did not assist the jury in determining a fact at issue. As a result, he concludes that his conviction and sentence should be reversed and remanded for a new trial. We find no merit to these arguments.

La C.E. Art. 702 governs the admissibility of expert testimony and provides that a witness, who is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if the expert's scientific,

technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.

In *State v. Boudoin*, 11–967 (La. App. 5 Cir. 12/27/12), 106 So.3d 1213, 1225, writ denied, 13–255 (La. 8/30/13), 120 So.3d 260, this Court discussed the standards for the admissibility of expert testimony as follows:

> In *State v. Foret*, 628 So.2d 1116 (La. 1993), the Louisiana Supreme Court adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *State v. Chauvin*, 02–1188 (La. 5/20/03), 846 So.2d 697, 700–701. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 592–594, 113 S.Ct. 2786. *Daubert's* general "gatekeeping" applies not only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); and *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99–2181 (La. 2/29/00), 755 So.2d 226.

> The trial court may consider one or more of the four *Daubert* factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. *Kumho Tire Co., Ltd.*, 526 U.S. at 142, 119 S.Ct. 1167. Rather, the law grants a district court "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.*

The trial judge is vested with broad discretion in determining the scope of expert testimony. *State v. Borden*, 07–396 (La. App. 5 Cir. 5/27/08), 986 So.2d 158, 172. Competence of an expert witness is a question of fact to be determined within the sound discretion of the

trial judge whose rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error.     *State v. Mosley*, 08–1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 714, *writ denied*, 09–1316 (La. 3/5/10), 28 So.3d 1002.

In this *pro se* assigned error challenging Mr. Brookes' expert testimony, defendant argues that the trial court failed to apply *Daubert's* "gatekeeping obligation" which requires an inquiry into both relevance and reliability.     This argument is clearly without merit as evidenced by the trial court's very thorough reasons for judgment.     In his reasons for judgment, the trial judge discussed *Daubert* and the confusion associated with its application in certain cases and further mentioned other cases relating to admissibility of expert testimony. The trial judge specifically cited *Cheairs v. State ex rel. Department of Transportation and Development*, 03–680 (La. 12/3/03), 861 So.2d 536, and focused on the factors set forth therein in his reasons for allowing the expert testimony.

First, the trial court considered whether the expert was qualified to testify competently about the matters he intended to address.     In finding that Mr. Brookes was "certainly an expert in mechanical engineering and auto design," the trial court stated:

> He, based upon his curriculum vitae that he went over at length, he has a master's in mechanical engineering.     He has gone over the designs of automobiles from Chrysler for years and years and years and has been employed with them for nearly thirty years.     He's even dealt with the clay design of the vehicles, the crash testing of the vehicles, the underbody design of these vehicles, the body-in-white and exterior engineering of these vehicles.     He is certainly an expert in mechanical engineering and auto design.

Second, the trial court considered whether the methodology by which the expert reached his conclusion was sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*.     The trial court addressed defendant's concern that "there is absolutely no methodology to be applied in this case, and the *Daubert* factor should be applied."     The court first commented that the *Daubert* factors are not necessary or even applicable in all cases and then continued as follows:

> I'm not adopting the—the eyeball test, but essentially, the testing, if you will call it that, of Mr. Brookes as looking at the photographs is not a quote unquote testing where the *Daubert* factors would be useful....

The Court disagrees that Mr. Brookes is simply guessing. Mr. Brookes went on and went through all of these photographs and the video. I'll say Video 1 he showed the headlamps, noted that it was mid-sized, noted that the rear lamps—he had an explanation for the headlamps and rear lamps were consistent with the 2012 or later Dodge Avenger.

The still 22, he suggested there was a very unique back. The door had a whale swoop and a blacked-out triangle, and that no other vehicle has all of these elements consistent on the same vehicle. And furthermore, there was a blue vehicle, which is a color consistent and offered by Chrysler from 2012 and 2014. The totality of all those design features and the totality of his experience, certainly this Court finds would be helpful and reliable.

Third, the trial court considered whether the testimony would assist the trier of fact through the application of scientific, technical, or specialized expertise to understand the evidence or to determine a fact in issue. In addressing this factor, the trial court found that the testimony Mr. Brookes intended to offer "would assist the trier of fact and that his specialized expertise in dealing with the design of Chrysler vehicles, including the Dodge Avenger, would certainly be helpful to the jury, and that it would determine a fact at issue in this case of whether or not the Defendant was driving or was in the blue Dodge vehicle or some other vehicle."[8]

[8] Detective Gai, in his testimony, indicated that a witness, who had seen the suspect vehicle that was fleeing on the night of the murders, had informed the police that the vehicle was a Nissan Altima.

Given these extensive reasons addressing both the reliability and the relevancy of the challenged expert testimony, we find no abuse of discretion in the trial court's ruling that allowed the admission of Mr. Brookes' expert testimony at trial. Accordingly, the arguments raised by defendant in this assigned error are without merit.[197]

The Louisiana Supreme Court likewise denied relief without citing additional reasons.

Here, the state courts found that there was no error – the testimony in question was properly admitted under state evidence law. That is a finding this Court may not second-

---

[197] *Achelles*, 16-170, 208 So. 3d 1076-79; State Rec., Vol. 13 of 16.

guess.    The state courts are the final arbiters of state law.    *See Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.*, 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.    We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)); *see Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions are state law.").

Achelles challenges the admissibility of Brookes' testimony on the basis that it was not supported by scientific testing, principles, or methodology and that it was unreliable and had no probative value because it did not assist the jury in determining a fact at issue.    The admissibility of testimony, even that of experts, is a matter of state law that is not subject to re-examination by this federal court on habeas review.    It is not the province of a federal habeas court to asses a state court's application of state law or determination of state-law questions.    *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011). Instead, "a federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair."    *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).    To do so, the petitioner must demonstrate that the error had a substantial and injurious effect on the jury's verdict in violation of due process.    *See Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007); *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct.

1710, 123 L.Ed.2d 353, 63738 (1993).    A due process violation exists when the wrongfully admitted testimony "played a crucial, critical, and highly significant role in the trial" in a manner that unfairly impacted the jury's verdict.    *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).    The question of whether a petitioner's due process rights were violated is a question of law.    *Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008).

Thus, to present a federal issue, Achelles must point to an evidentiary error by the state trial court in allowing the testimony of Brookes, and he has not done so.    The Court recognizes Brookes's reliance on *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and related state case law, as a measure for assessing the reliability of the expert's testimony and whether his testimony was properly admitted.    As is well-known to this Court, the Supreme Court in *Daubert* charged trial courts to act as "gatekeeper" to ensure the relevance and reliability of scientific expert testimony. However, "*Daubert* is not premised on the [federal] Constitution."    *Black v. Thomas*, No. 1:04–cv–567, 2006 WL 2547405, at *7 (M.D. Ala. Aug. 31, 2006); *accord Williams v. Withrow*, 328 F . Supp. 2d 735, 745 (E.D.Mich.2004).    Accordingly, *Daubert* has no direct applicability to federal habeas corpus claims and cannot serve as a basis for the granting of habeas relief. *See Keller v. Larkins*, 251 F.3d 408, 419 (3rd Cir. 2001); *Craig v. Cain*, Civ. Action No. 08–3486, 2009 WL 117010, at *9 (E. D. La. Jan. 14, 2009); *Stogner v. Cain*, Civ. Action No. 05–4317, 2008 WL 269078, at *13 (E.D. La. Jan. 30, 2008); *Payne v. Bobby*, No. 2:05–CV–050, 2006 WL 508784, at *23 (S.D. Ohio Feb. 27, 2006), *adopted*, 2006 WL 2583380 (S.D. Ohio Sept. 6, 2006); *Hassinger v. Adams*, No. C 05–01011, 2006 WL 294798, at *13 n. 6 (N.D. Cal. Feb. 7, 2006).

The standard on habeas corpus review is not whether the testimony satisfied *Daubert*, but whether the <u>wrongful</u> admission of evidence rendered the trial fundamentally unfair under due process standards.    *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994); *Wilson v. Sirmons*, 536 F.3d 1064, 1101 (10th Cir. 2008); *Williamson v. Ward*, 110 F.3d 1508, 1522-23 (10th Cir. 1997); *Schmidt v. Hubert*, Civ. Action No. 05–2168, 2008 WL 4491467, at *14 (W.D. La. Oct. 6, 2008); *Stogner*, 2008 WL 269078, at *13.

Thus, the focus here is on whether the testimony was erroneously admitted.    The Court can find no mandate that would prevent a state trial court from admitting the testimony of an engineer identifying a vehicle seen on surveillance.    To the contrary, such evidence has been found admissible.    *United States v. Well*s, 879 F. 3d 900, 933-34 (9th Cir. 2018) (trial court did not abuse its discretion in allowing engineer and technical specialist with twenty years' experience at Honda including seven years as an engineer responsible for the make and model of the defendant's vehicle was permitted to testify regarding the likelihood that the vehicle in surveillance footage was the same make and model on which he worked directly for seven years); *United States v. Protho*, No. 17-cr-00827, 2021 WL 1020999, at *8 (N.D. Ill. Mar. 17, 2021) (expert in forensic video and photographic analysis used surveillance videos and images to compare depicted vehicle with defendant's vehicle and depicted person with defendant).    The mere presentation of the evidence, therefore, is not *per se* error, and Achelles has failed to establish any other reason that an error occurred when the testimony was presented in his case.    Without some showing that the testimony was wrongfully or erroneously admitted, he cannot establish that his trial was rendered unfair.

Furthermore, the Court notes that Brookes was vigorously cross-examined by the defense counsel at trial.[198]    To the extent Achelles contends that the testimony should not have been believed in light of his claim that he did not commit the murders, his argument also must fail on habeas review.    Once the testimony of an expert is properly admitted, it is for the jury to resolve the credibility and the reliability of the expert's testimony.    As previously addressed, it is not the role of a federal habeas court to assess the credibility of witness testimony.    *Accord Schlup*, 513 U.S. at 330; *Ramirez*, 398 F.3d at 695; *McCowin*, No. 93-5340, 1994 WL 242581, at *2; *Phillips*, No. 11-2725, 2012 WL 2564926, at *14; *Picou*, No. 06-6258, 2007 WL 1521021, at *5.

The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.    Achelles is not entitled to relief on this claim.

### 3.    Denial of Severance of Offenses

Achelles claims that the trial court erred in denying his motion to sever counts. While Achelles did not brief his claim in his habeas petition, on direct appeal he claimed that the trial court erred in refusing to sever count three (felon in possession of a firearm) and count four (pandering).    Petitioner claimed that trying him on all four counts at the same time confused the jury as it could not segregate each crime.    He further claimed that because count three was tried in the same case, the jury heard evidence that he was previously convicted of an armed robbery.    He claimed the possession of a firearm did not stem from the double homicide.    He further claimed that neither the possession of the

---

[198]    State Rec., Vol. 11 of 16, Trial Transcript (cont'), pp. 207- 34, 3/17/15.

firearm nor the pandering offenses were similar in character or based on the same act or transaction and were unrelated to the double homicide.[199]

The Louisiana Fifth Circuit rejected this claim reasoning:

In his second pro se assignment of error, defendant challenges the trial court's denial of his motion to sever the offenses.

In the present case, the indictment charged defendant with two counts of second degree murder, one count of illegal possession of a firearm by a convicted felon, and one count of pandering. Prior to trial, defendant filed a motion to sever the offenses pursuant to La. C.Cr.P. Art. 495.1, and at the subsequent hearing on the motion, defendant specifically requested that the pandering charge be separated from the other offenses because it "has absolutely nothing to do" with the other offenses. Defendant argued that he would be prejudiced if the pandering charge was tried with the other offenses because the jury would be confused and would infer guilt based on defendant's involvement in the pandering.

After considering the arguments of counsel, the trial court denied defendant's motion, noting that severing the charges "would prohibit the State from telling the entirety of the investigation" and "juries are smart enough to separate the charges." The court further noted that it would "instruct [the jury] to consider all these charges separately and distinctly" and would provide "sufficient instructions to insure that...if there is any prejudice, that it is very slight."

Defendant now contends that the trial court abused its discretion in denying his motion for severance of the offenses. He specifically contends that trying him on four offenses at the same time resulted in "prejudicial confusion" because the jury had trouble segregating the evidence as to each count. In addition, defendant alleges that the possession of a firearm by a convicted felon charge was extremely prejudicial because it informed the jury that he had been previously convicted of an armed robbery. Further, he argues that the joinder of the offenses allowed the jury to infer a criminal disposition and made the jury hostile to his defenses. We find no merit to these arguments.

La. C.Cr.P. Art. 493 permits the joinder of offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or

---

[199] State Rec., Vol. 13 of 16, Pro-Se Supplemental Brief for Direct Appeal, 16-KA-0179, at pp. 6-8, 8/31/16.

constituting parts of a common scheme or plan" and the offenses are triable by the same mode of trial.

A defendant properly charged in the same indictment with two or more offenses pursuant to La. C.Cr.P. Art. 493 may nonetheless move for a severance of the offenses under La. C.Cr.P. Art. 495.1, which provides as follows:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

In determining whether prejudice results from a joinder of offenses, the trial court must consider the following factors: whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. *State v. Fontenberry*, 09–127 (La. App. 5 Cir. 10/27/09), 27 So.3d 904, 909–10, *writ denied*, 09–2665 (La. 5/28/10), 36 So.3d 246. In addition, it must be considered that prejudice from the joinder of offenses can be mitigated by clear jury instructions and by an orderly presentation of evidence by the State. *State v. Davis*, 12–512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 84, *writ denied*, 13–1205 (La. 11/22/13), 126 So.3d 479.

A defendant alleging a prejudicial joinder of offenses has a heavy burden of proof. Motions to sever under La. C.Cr.P. Art. 495.1 are within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion. Factual, rather than conclusory, allegations are required when the defendant alleges prejudicial joinder of offenses on a motion to sever. *State v. Fontenberry*, 27 So.3d at 910. Finally, there is no prejudicial effect from joinder of offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations. *State v. Butler*, 15–89 (La.App. 5 Cir. 7/29/15), 171 So.3d 1283, 1288, *writ denied*, 15–1608 (La. 10/10/16), 207 So.3d 408, 2016 WL 6238013.

Applying these principles to the present case, we find that defendant did not meet his heavy burden of proving prejudicial joinder. At trial, evidence of each crime was presented in a logical and orderly fashion. In addition, there is no indication that the jury was confused by the various counts, or that defendant was confounded in presenting his defense. Moreover, the trial court charged the jury separately as to each offense,

explaining in detail what the State was required to prove with respect to each count. Accordingly, we find that these offenses did not warrant a severance, and the trial court did not abuse its discretion in denying defendant's motion to sever.    This assigned error is without merit.[9][200]

> [9] It is noted that defendant recently filed a pro se reply brief to the State's opposition to his pro se supplemental appellate brief. Although defendant filed this reply brief after the case was submitted to this Court, we nonetheless considered the arguments presented therein prior to rendering this opinion.

The Louisiana Supreme Court likewise denied relief without citing additional reasons.

It is settled that "[s]everance is within the discretion of the trial court and is required only in cases of compelling prejudice." *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir. 1986) (citing *United States v. MacIntosh*, 655 F.2d 80, 84 (5th Cir. 1981)).    "The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed by a reviewing court."    *Breeland*, 786 F.2d at 1241 (citation omitted) . For purposes of habeas review, simultaneous trial of more than one offense must have rendered the state trial fundamentally unfair before a petitioner can obtain federal habeas relief. *Alvarez v. Wainwri*ght, 607 F.2d 683, 685 (5th Cir. 1979) (quoting *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976)).

Achelles's due process challenge to the denial of his request for a severance presents a mixed question of law and fact for this Court.[201]    *Richardson v. Quarterman*, 537 F.3d 466,

---

[200] *Achelles*, 16-KA-170, 208 So. 3d at 1079-80; State Rec., Vol. 13 of 16.

[201] As Achelles's did not brief the issue in his petition, the Court notes that to the extent he challenges the trial court's state-law application and analysis of severance principles as erroneous, he has not stated a cognizable federal claim.    A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.    *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).    "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."    *Estelle*, 502 U.S. at 67-68, 112 S.Ct. 475; *see also Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (1997) (a disagreement as to state law is not cognizable on federal habeas review).    Instead, federal habeas courts sit only to address violations of constitutional magnitude, including due process violations that render the criminal proceedings fundamentally

472 (5th Cir. 2008) (Whether a petitioner's due process rights were violated is a question of law); *Manning v. Warden, Louisiana St. Penitentiary*, 786 F.2d 710, 711-12 (5th Cir. 1986) (failure of state court to sever counts presents a due process question of fundamental fairness on habeas review) (citing *Tifford v. Wainwright*, 588 F.2d 954, 957 (5th Cir. 1979) (denial of motion to sever codefendant's trial from that of other codefendants, under facts of the case, made trial "fundamentally unfair")).   On federal habeas review, this Court must determine if the state court's decision to deny the severance motion was contrary to, or involved an unreasonable application of, Supreme Court precedent concerning Achelles's due process rights.

As explained above, the appellate court determined that Achelles's did not prove he was prejudiced when the trial court allowed the offenses to be tried together.   For purposes of this habeas proceeding, the issue is one of fundamental fairness and undue prejudice.

As the court of appeal noted, the indictment charges Achelles with two counts of second degree murder (counts one and two), one count of possession of a firearm by a convicted felon (count three), and one count of pandering (count four).   Achelles characterizes the crimes as unrelated.   The defense claimed that the pandering charge, which occurred on a separate occasion and had nothing to do with the murders, would mislead the jury. [202]   He further claimed that the jury may infer guilt based upon

---

unfair.   *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37, 62 S.Ct. 280, 86 L.Ed. 166 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right.").   Thus, allegations regarding the state courts' interpretation and application of Louisiana law on severance of offenses, even if erroneous, cannot establish grounds for federal habeas corpus relief.

[202]   State Rec., Vol. 10 of 16, Hearing Transcript, pp. 3-4, 9/17/14.   The Court notes that

pandering.[203]    The trial court found that the pandering charge was proper and told the entirety of the story.    It explained that the set up was how Achelles was arrested and that severing the charge would prohibit the State from telling the story of the entirety of the investigation and would be skipping over key pieces.    It further found that juries are smart enough to separate charges and would not convict on murder just because jurors felt Achelles was a panderer.[204]    It explained it would instruct the jury to consider all the charges separately.[205]    It therefore denied the motion to sever.

In reviewing the ruling, the court of appeal carefully weighed the impact that joining the offenses would have on the jury and on Achelles's ability to present a defense and found that Achelles failed to meet the heavy burden of proving prejudicial joinder.    In this case, despite the attempt to argue confusion and prejudice by joinder, three of the offenses (counts one through three) all took place on the same date and the fourth offense occurred two days later and involved a set-up to arrest Achelles.

The facts were not complex.    The evidence was simple and distinct.    The offenses were easily segregated by the jury.    The State presented the evidence in an organized, coherent manner that allowed jurors to distinguish between the different offenses.    The record does not reflect any confusion by jurors.    His allegation that jurors must have inferred he was criminally responsible for the murders simply because he was also tried for

---

defense counsel did not seek severance of the felon in possession of a firearm charge, which was obviously related to the murders given that the victims were shot.    *See* State Rec., Vol. 1 of 16, Motion for Severance of Offenses, 9/11/14.

[203]  *Id.*, at p. 4.

[204]  *Id.*, at p. 6.

[205]  *Id.*, at p. 7.

pandering is baseless.    There was ample independent and objective evidence upon which to reject the defense that Lemon, rather than Achelles, committed the murders and possessed a firearm in doing so.    Achelles has not shown that the failure to sever the two counts was prejudicial or that it prevented him from obtaining a fair trial.    This claim does not warrant habeas relief.

### RECOMMENDATION

**IT IS RECOMMENDED** that Achelles's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[206]

New Orleans, Louisiana, this ___8th___ day of ___September___, 2021.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[206] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.